Opinion
 

 TODD, Acting P. J.
 

 This case concerns the validity of California’s obscene matter statutes, Penal Code
 
 [1]
 
 sections 311 and 311.2, as applied to distributors of such matter under the right to privacy set forth in article I, section 1, of the California Constitution. Finding section 311.2 invalid on this privacy right ground, the Municipal Court, San Diego Judicial District, sustained a demurrer without leave to amend to two counts charging six defendants
 
 [2]
 
 with conspiracy to distribute obscene matter (§§ 182, subd. (a)(1), 311.2), and with violating section 311.2 making it a misdemeanor where one “possesses, prepares, publishes, or prints, with intent to distribute or to exhibit to others, or who offers to distribute, distributes, or exhibits to others, any obscene matter . . . .” The People appeal an order of the San Diego County Superior Court denying their motion to reinstate those portions of the complaint that are dependent on the validity of section 311.2. (§§ 871.5, 1238, subd. (a)(9).)
 

 Each of the defendants has filed a respondent’s brief, the basic thrust of which is that they, as distributors of obscene matter, have standing to assert their customers’ privacy right to possess, which includes a right to acquire, obscene matter; that obscene matter in the hands of their customers is protected under the privacy provision of the California Constitution which therefore also protects distributors of obscene matter; and that the state
 
 *1304
 
 cannot fulfill its burden of demonstrating a compelling interest in prohibiting obscene matter on the basis of its content.
 
 [3]
 

 The People urge that defendants have no standing to raise privacy claims and, even if standing exists, California’s right to privacy does not abrogate section 311.2 in that it does not apply to the commercial sale and distribution of obscene material or extend to the purchase of such material; and in any event California has a legitimate state interest in regulating the commercial sale and distribution of obscenity.
 
 [4]
 

 Under principles set forth in
 
 Hill
 
 v.
 
 National Collegiate Athletic Assn.
 
 (1994) 7 Cal.4th 1, 39-40 [26 Cal.Rptr.2d 834, 865 P.2d 633]
 
 (Hill),
 
 we conclude the defendants, as distributors of obscene matter, do not come within the protection of the California Constitution’s privacy right for purposes of a prosecution under section 311.2.
 

 Facts
 

 Initially, we emphasize that the truthfulness of the allegations of misdemeanor crimes against the defendants for violating section 311.2 by distributing obscene matter and conspiring to do so is not established. For purposes of this case we merely assume the truthfulness of those allegations. We also assume we are dealing with the following as a constitutional, sufficiently certain definition of obscene matter under section 311
 
 [5]
 
 which controls the misdemeanor offense with which the defendants are charged under section 311.2: “[P]atently offensive representations or descriptions of the specific
 
 *1305
 
 ‘hard core’ sexual conduct given as examples in
 
 Miller I
 
 [(1973) 413 U.S. 15 (37 L.Ed.2d 419, 93 S.Ct. 2607)] i.e., ‘ultimate sexual acts, normal or perverted, actual or simulated,’ and ‘masturbation, excretory functions, and lewd exhibitions of the genitals.’ (413 U.S. at p. 25 [37 L.Ed.2d at p. 431].)”
 
 (Bloom
 
 v.
 
 Municipal Court
 
 (1976) 16 Cal.3d 71, 81 [127 Cal.Rptr. 317, 545 P.2d 229].)
 

 With these factual assumptions in mind for purposes of this case which essentially entails review of an order of dismissal following sustaining a demurrer without leave to amend, we proceed with our analysis.
 

 Discussion
 

 Article I, section 1, of the California Constitution, with the addition of “privacy” to its provisions as of November 7, 1972 (the Privacy Initiative), provides: “All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.”
 

 With respect to standing to assert a privacy right under this section based on the consumer’s rather than the distributor’s right, there is sufficient general similarity between the California Constitution article I, section 1, privacy assertion and a federal constitutional First Amendment privacy right to lead us to follow
 
 Eisenstadt
 
 v.
 
 Baird
 
 (1972) 405 U.S. 438, 445-446 [31 L.Ed.2d 349, 357-358, 92 S.Ct. 1029], which permitted a distributor of contraceptives to vicariously assert the privacy rights of his customers with respect to a Massachusetts statute prohibiting distribution of contraceptives to unmarried persons. For purposes of standing,
 
 Eisenstadt
 
 expressed concern with the impact of the litigation on third party interests and noted the court, in First Amendment cases, had relaxed its rules of standing “without regard to the relationship between the litigant and those whose rights he
 
 *1306
 
 seeks to assert precisely because application of those rules would have an intolerable, inhibitory effect on freedom of speech.”
 
 (Id.
 
 at p. 445, fn. 5 [31 L.Ed.2d at p. 358].) As in
 
 Eisenstadt,
 
 we conclude under the Privacy Initiative that the defendants as distributors of obscene matter have standing to assert the privacy rights of their customers.
 
 [6]
 

 Our conclusion the defendants have standing to make their arguments based on their customers’ rights does not mean the arguments prevail, for the defendants’ own relationship to the charges, here as distributors of obscene matter, must be factored into any analysis of the matter.
 
 Hill, supra,
 
 7 Cal.4th 1, 39-40, establishes the elements and mode of analysis to be made of California Constitution, article I, section 1, privacy claims.
 
 [7]
 

 To succeed in an assertion of an invasion of privacy violating the Privacy Initiative a party “must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.”
 
 (Hill, supra,
 
 7 Cal.4th at pp. 39-40.) Moreover,’’Whether a legally recognized privacy interest is present in a given case is a question of law to be decided by the court. [Citations.] Whether plaintiff has a reasonable expectation of privacy in the circumstances and whether defendant’s conduct constitutes a serious invasion of privacy are mixed questions of law and fact. If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law.”
 
 (Id.
 
 at p. 40.)
 
 [8]
 

 
 *1307
 

 Hill
 
 made it clear that not “every assertion of a privacy interest under article I, section 1 must be overcome by a ‘compelling interest.’ ” (7 Cal.4th at pp. 34-35.)
 
 Hill
 
 thus modified the apparent meaning of statements in cases such as
 
 White
 
 v.
 
 Davis
 
 (1975) 13 Cal.3d 757, 775, 776 [120 Cal.Rptr. 94, 533 P.2d 222], which reviewed the ballot pamphlet argument for the Privacy Initiative and suggested the compelling interest test is applicable whenever there is shown a prima facie violation of the state constitutional privacy right. The rule suggested by
 
 White
 
 v.
 
 Davis
 
 was that “any such intervention [into individual privacy protected by article I, section 1] must be justified by a compelling interest.”
 
 (Id.
 
 at p. 775.) Instead,
 
 Hill
 
 sets forth the rule: “Where the case involves an obvious invasion of an interest fundamental to personal autonomy, e.g., freedom from involuntary sterilization or the freedom to pursue consensual familial relationships, a ‘compelling interest’ must be present to overcome the vital privacy interest. If, in contrast, the privacy interest is less central, or in bona fide dispute, general balancing tests are employed.”
 
 (Hill, supra,
 
 7 Cal.4th at p. 34, fn. omitted.)
 

 We conclude as a matter of law there is no legally protected privacy interest in the distribution of obscene matter and there can be no reasonable expectation of privacy in circumstances involving the distribution of obscene matter. Thus, since the first two elements for establishing a California Constitution, article I, section 1, right of privacy are not fulfilled, the defendants were not entitled to relief by way of the demurrer addressed to the charges against them under section 311.2. Put in the context of the proceedings leading to this appeal, our conclusion is the superior court erred in failing to grant the People’s motion to reinstate the portions of the complaint as to which the demurrer was sustained without leave to amend.
 

 These conclusions that there is no protectible privacy interest under California Constitution, article I, section 1, involved in this case make it abundantly clear there is no basis for applying the “compelling interest” test. There is not involved in this case dealing with obscene matter any “vital privacy interest” that could be seen as an “interest fundamental to personal autonomy.”
 
 (Hill, supra, 7
 
 Cal.4th at p. 34.) We reject the defendants’ arguments to the contrary equating these rights to those involved in connection with contraception or abortion, for example as in
 
 Conservatorship of Valerie N.
 
 (1985) 40 Cal.3d 143, 164 [219 Cal.Rptr. 387, 707 P.2d 760] (contraception) or
 
 Committee to Defend Reproductive Rights
 
 v.
 
 Myers
 
 (1981) 29 Cal.3d 252 [172 Cal.Rptr. 866, 625 P.2d 779, 20 A.L.R4th 1118] (abortion).
 

 
 *1308
 
 We return to the defendants’ assertions of the privacy rights of their customers. Their basic argument starts with the established rule the state has no power to regulate the
 
 possession
 
 of obscene matter by individuals.
 
 (Stanley
 
 v.
 
 Georgia
 
 (1969) 394 U.S. 557, 564 [22 L.Ed.2d 542, 549, 89 S.Ct. 1243].) In addition, the California Constitution, article I, section 1, privacy right is not only self-executing
 
 (White
 
 v.
 
 Davis, supra,
 
 13 Cal.3d 757, 775), but is broader than the federal constitutional right
 
 (City of Santa Barbara
 
 v.
 
 Adamson
 
 (1980) 27 Cal.3d 123, 130, fn. 3 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219]). Thus, defendants argue that the California privacy right includes the right to
 
 acquire
 
 whatever obscene matter adults wish for their private use and enjoyment, and this right accordingly encompasses a right to distribute obscene matter.
 

 The difficulty with this argument relying on a private possessor’s right to possess, and thus acquire, obscene matter is the California Supreme Court has rejected it as “completely discredited.”
 
 (Bloom
 
 v.
 
 Municipal Court, supra,
 
 16 Cal.3d 71, 81.)
 
 Bloom
 
 states:
 
 “Plaintiff’s contention that the right to possess obscene material in the privacy of one’s own home,
 
 announced in
 
 Stanley
 
 v.
 
 Georgia
 
 (1969) 394 U.S. 557 [22 L.Ed.2d 542, 89 S.Ct. 1243],
 
 implies the right not only to receive, but also to sell and distribute
 
 such material,
 
 has been completely discredited.
 
 ‘The District Court ignored both
 
 Roth
 
 and the express limitations on the reach of the
 
 Stanley
 
 decision. Relying on the statement in
 
 Stanley
 
 that “the Constitution protects the right to receive information and ideas . . . regardless of their social worth,” 394 U.S., at 564 [22 L.Ed.2d 542, 549, 89 S.Ct. 1243, 1247], the trial judge reasoned that “if a person has the right to receive and possess this material, then someone must have the right to deliver it to him.” . . . [f] The District Court gave
 
 Stanley
 
 too wide a sweep. To extrapolate from Stanley’s right to have and peruse obscene material in the privacy of his own home a First Amendment right in
 
 Reidel
 
 to sell it to him would effectively scuttle
 
 Roth,
 
 the precise result that the
 
 Stanley
 
 opinion abjured. Whatever the scope of the ‘right to receive’ referred to in
 
 Stanley,
 
 it is not so broad as to immunize the dealings in obscenity in which Reidel engaged here [distributing it by mail]— dealings that
 
 Roth
 
 held unprotected by the First Amendment.’
 
 (United States
 
 v.
 
 Reidel
 
 (1971) 402 U.S. 351, 355 [28 L.Ed.2d 813, 817, 91 S.Ct. 1410]; see
 
 Paris Adult Theatre I
 
 v.
 
 Slaton
 
 (1973) 413 U.S. 49, 69 [37 L.Ed.2d 446, 464, 93 S.Ct. 2628];
 
 United States
 
 v.
 
 Thirty-Seven Photographs
 
 (1971) 402 U.S. 363, 375-377 [28 L.Ed.2d 822, 833-835, 91 S.Ct. 1400];
 
 People
 
 v.
 
 Luros
 
 (1971) 4 Cal.3d 84, 90-93 [92 Cal.Rptr. 833, 480 P.2d 633].)” (16 Cal.3d at pp. 81-82, italics added.)
 

 Thus,
 
 Bloom
 
 considered and rejected the identical argument raised by defendants in this case that the right of the individual to privately possess
 
 *1309
 
 obscene matter extends to the distributor of that matter.
 
 People
 
 v.
 
 Luros
 
 (1971) 4 Cal.3d 84, 92 [92 Cal.Rptr. 833, 480 P.2d 633], similarly concludes and explains: “We also find meritless defendants’ argument that the holding in
 
 Stanley
 
 necessitates the conclusion that a state may not constitutionally regulate commercial distribution of obscene material because such regulation makes more difficult the full exercise of the right to possess obscenity privately.”
 

 Outside the realm of the Privacy Initiative,
 
 Bloom
 
 and
 
 Luros
 
 clearly preclude a successful argument that a distributor of obscene matter derives any protection from regulation out of the right of the individual to possess obscene matter in private. Unless some feature of the Privacy Initiative leads to a contrary result, we must conclude there is no legally protected privacy interest in the distributor of obscene matter based on this derivative theory, the principal theory the defendants present to shelter themselves from prosecution. In the context of present law pertaining to the regulation of obscene matter, we now consider whether any such Privacy Initiative feature leads to a different conclusion.
 

 With respect to the state’s power to regulate obscene matter,
 
 Luros
 
 sets forth the following principles:
 

 “The rights protected by the First and Fourteenth Amendments are not ‘absolutes’ in the sense that where the constitutional protection exists it must prevail.
 
 (Konigsberg
 
 v.
 
 State Bar
 
 (1960) 366 U.S. 36, 49 [6 L.Ed.2d 105, 115, 81 S.Ct. 997];
 
 Breard
 
 v.
 
 City of Alexandria
 
 (1951) 341 U.S. 622, 642 [95 L.Ed. 1233, 1248, 71 S.Ct. 920, 932].) As was said in Breard: ‘Freedom of speech or press does not mean that one can talk or distribute where, when and how one chooses. Rights other than those of the advocates are involved. By adjustment of rights, we can have both full liberty of expression and an orderly life.’
 
 (Id.)
 
 As we have discussed above, in the context of public distribution of obscenity, the balance of interests upholds the constitutionality of state regulation, even though that regulation imposes some burdens upon the exercise of constitutional rights.
 

 “Therefore, we find that
 
 Stanley,
 
 as the United States Supreme Court expressly stated, does not impair
 
 Roth
 
 and the cases following it.
 
 States retain broad power to regulate obscenity and regulation of the public distribution of obscenity falls well within the broad scope of that power.” (People
 
 v.
 
 Luros, supra,
 
 4 Cal.3d 84, 92-93, italics added.)
 

 Concerning the power of the state to regulate obscene matter under California Constitution article I, section 1, as it read before the Privacy
 
 *1310
 
 Initiative added “privacy” to that provision,
 
 [9]
 
 the California Supreme Court in
 
 Bloom
 
 also followed the view expressed by the United States Supreme Court as follows: “Plaintiff next contends that section 311.2, subdivision (a), should be declared invalid under article I, sections 1 and 2, of the California Constitution on the ground that the state has no legitimate interest in regulating commercial distribution of obscene material. This contention, too, has been thoroughly discredited. ‘[W]e hold that there are legitimate state interests at stake in stemming the tide of commercialized obscenity, even assuming it is feasible to enforce effective safeguards against exposure to juveniles and to passersby. [Fn. omitted.] Rights and interests “other than those of the advocates are involved.” [Citation omitted.] These include the interest of the public in the quality of life and the total community environment, the tone of commerce in the great city centers, and, possibly, the public safety itself. The Hill-Link Minority Report of the Commission on Obscenity and Pornography indicates that there is at least an arguable correlation between obscene material and crime. [Fn. omitted.] . . . . [j[] But, it is argued, there are no scientific data which conclusively demonstrate that exposure to obscene material adversely affects men and women or their society. It is urged on behalf of the petitioners that, absent such a demonstration, any kind of state regulation is “impermissible.” We reject this argument. . . .[][]. . . . [ft]. . . . [][] If we accept the unprovable assumption that a complete education requires the reading of certain books [citation omitted], and the well nigh universal belief that good books, plays, and art lift the spirit, improve the mind, enrich the human personality, and develop character, can we then say that a state legislature may not act on the corollary assumption that commerce in obscene books, or public exhibitions focused on obscene conduct, have a tendency to exert a corrupting and debasing impact leading to antisocial behavior? . . . The sum of experience, including that of the past two decades, affords an ample basis for legislatures to conclude that a sensitive, key relationship of human existence, central to family life, community welfare, and the development of human personality, can be debased and distorted by crass commercial exploitation of sex. Nothing in the Constitution prohibits a State from reaching such a conclusion and acting on it legislatively simply because there is no conclusive evidence or empirical data.’
 
 (Paris Adult Theatre I
 
 v.
 
 Slaton
 
 [1973] 413 U.S. [49] at pp. 57-63 [37 L.Ed.2d at pp. 456-460].)”
 
 (Bloom
 
 v.
 
 Municipal Court, supra,
 
 16 Cal.3d at pp. 82-83.)
 

 We must follow the strong and repeated statements of the rule rejecting any concept that the distributor of obscene matter may find protection from regulation by citing the right of the private possessor of such material.
 
 (Auto
 
 
 *1311
 

 Equity Sales, Inc.
 
 v.
 
 Superior Court
 
 (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) There is nothing in the language or purpose of the Privacy Initiative pointing to a different conclusion. As in the case of the privacy right under the First and Fourteenth Amendments (see
 
 People
 
 v.
 
 Luros, supra, 4
 
 Cal.3d 84, 92), the right under the Privacy Initiative is not “absolute.”
 
 (Hill, supra,
 
 7 Cal.4th 1, 35.) Moreover,
 
 Hill
 
 observes: “The principal focus of the Privacy Initiative is readily discernible. The Ballot Argument warns of unnecessary information gathering, use, and dissemination by public and private entities—images of ‘government snooping,’ computer stored and generated ‘dossiers’ and ‘ “cradle-to-grave” profiles on every American’ dominate the framers’ appeal to the voters. (Ballot Argument,
 
 supra,
 
 at p. 26.)
 
 The evil addressed is government and business conduct in ‘collecting and stockpiling unnecessary information
 
 . . .
 
 and misusing information gathered
 
 for one purpose in order to serve other purposes or to embarrass . . . .’
 
 (Id.
 
 at p. 27.) ‘The [Privacy Initiative’s] primary purpose is to afford individuals some measure of protection against this most modern threat to personal privacy.’
 
 (White
 
 v.
 
 Davis, supra,
 
 13 Cal.3d at p. 774.)”
 
 (Hill, supra, 7
 
 Cal.4th 1, 21, italics added.)
 

 Business or government snooping, information gathering, dossier keeping or misusing of information simply are not involved in the state regulation of obscene matter under section 311.2. The purposes of this type of state regulation as reflected in the above quotation from
 
 Paris Adult Theatre I
 
 (v.
 
 Slaton
 
 (1973) 413 U.S. 49 [37 L.Ed.2d 446, 93 S.Ct. 2628]) in
 
 Bloom
 
 (16 Cal.3d at pp. 82-83) remain just as valid when applied to a privacy right under the Privacy Initiative as when applied to a privacy right under the First and Fourteenth Amendments. In light of these accepted regulatory purposes and the absence of any conflict between regulation and the purposes of the Privacy Initiative, the mere fact the Privacy Initiative right is broader than the federally protected privacy right does not call for a conclusion obscene matter in the hands of a distributor cannot be regulated as by section 311.2.
 

 From the foregoing, we conclude the defendants as distributors of obscene matter do not have a legally protected privacy interest. Accordingly, the first element of
 
 Hill
 
 is not available to the defendants.
 

 Unable to rely on a derivative privacy interest based on the individual’s right to possess obscene material in private, the defendants as distributors of obscene matter also cannot establish the second element of
 
 Hill,
 
 a reasonable expectation of privacy in the circumstances. We can confidently state that as distributors of obscene matter, the defendants’ expectations are essentially the opposite, to let it be known such matter is available for dissemination and to engage in as wide a distribution of the matter as possible.
 

 
 *1312
 
 Since the first two elements necessary to establish a privacy right under the Privacy Initiative are absent, it is unnecessary to discuss the third element concerning the seriousness of the intrusion except to say there can be no doubt a criminal prosecution constitutes a serious intrusion if a privacy right is present.
 

 We recognize there are some state cases which have reached a result different from the result we reach here. (See
 
 State
 
 v.
 
 Kam
 
 (1988) 69 Hawaii 483 [748 P.2d 372];
 
 State
 
 v.
 
 Henry
 
 (1987) 302 Ore. 510 [732 P.2d 9].) By the same token there are cases from other states reaching a similar conclusion.
 
 (State
 
 v.
 
 Davidson
 
 (Minn. 1992) 481 N.W.2d 51;
 
 Stall
 
 v.
 
 State
 
 (Fla. 1990) 570 So.2d 257.) Without going into detail other than to refer to what we have said before, we obviously agree with the approach taken in the latter cases and disagree with the others.
 

 For the reasons given in the cases heretofore cited upholding the regulation of obscene matter as defined in this state (§311), and because the purposes of the Privacy Initiative do not call for a different definition, we reject the arguments of certain defendants that the California definition of obscene matter is unconstitutional. We shall not revisit this area which has been repeatedly litigated under state and federal free expression, due process standards equally applicable to “obscene matter” when considered under the Privacy Initiative. (See, e.g.,
 
 Bloom
 
 v.
 
 Municipal Court, supra,
 
 16 Cal.3d at pp. 75-81.)
 

 Disposition
 

 The order denying the motion to reinstate the first two causes of action is reversed. The superior court is directed to grant the motion and return the matter to the municipal court for further proceedings consistent with the views expressed in this opinion.
 

 Benke, J., and Huffman, J., concurred.
 

 A petition for a rehearing was denied January 25, 1995, and respondents’ petitions for review by the Supreme Court were denied January 25, 1995. Kennard, J., and Arabian, J., were of the opinion that the petitions should be granted.
 

 [1]
 

 All statutory references are to the Penal Code unless otherwise specified.
 

 [2]
 

 The defendants are Donald Joseph Wiener, Steven Donald Wiener, Robert Smith, Flavio Ramirez Sanchez, John Richard Shawkey and Alexander James Wylie.
 

 [3]
 

 Four amicus curiae briefs on behalf of the defendants are on file: (1) a brief by PHE, Inc., describing itself in part as a North Carolina corporation which, with sister corporations, “is engaged in the business of mailing throughout the Nation to adult customers contraceptives and various materials protected by the First Amendment, including sexually explicit magazines and videotapes, a medical newsletter entitled
 
 Sex Over Forty
 
 (which is edited by a physician), and a newspaper entitled
 
 Executive Health
 
 Report’; (2) a brief by American Booksellers Foundation for Free Expression, Council for Periodical Distributors Associations, International Periodical Distributors Association, Inc., Periodical and Book Association of America, Inc., Publishers Marketing Association, and Video Software Dealers Association; (3) a brief by the ACLU Foundation of San Diego & Imperial Counties, the ACLU Foundation of So. California, and the American Civil Liberties Union; and (4) a brief by Feminists for Free Expression.
 

 [4]
 

 Two amicus curiae briefs are on file on behalf of the People: (1) a brief by the National Law Center for Children and Families, the National Coalition Against Pornography, and the “Enough is Enough!” Campaign; and (2) a brief by the National Family Legal Foundation.
 

 [5]
 

 Section 311 provides in part:
 

 “As used in this chapter, the following definitions shall control the meaning of the respective terms:
 

 “(a) ‘Obscene matter’ means matter taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct; and which, taken as a whole, lacks serious literary, artistic, political, or scientific value.
 
 *1305
 
 “(1) When it appears from the nature of the matter or the circumstances of its dissemination, distribution or exhibition that it is designed for clearly defined deviant sexual groups, the appeal of the matter shall be judged with reference to its intended recipient group.
 

 “(2) In prosecutions under this chapter, where circumstances of production, presentation, sale, dissemination, distribution, or publicity indicate that matter is being commercially exploited by the defendant for the sake of its prurient appeal, such evidence is probative with respect to the nature of the matter and can justify the conclusion that the matter lacks serious literary, artistic, political, or scientific value.
 

 “(3) In determining whether the matter taken as a whole lacks serious literary, artistic, political, or scientific value in description or representation of such matters, the fact that the defendant knew that the matter depicts persons under the age of 16 years engaged in sexual conduct, as defined in subdivision (c) of Section 311.4, is a factor which can be considered in making that determination.”
 

 [6]
 

 Amici curiae National Law Center for Children and Families et al., concede standing and point out, “Defendants have a direct stake in the resolution of this case because they intend to commercially exploit the market which they seek to create.”
 

 [7]
 

 Although
 
 Hill
 
 dealt with a cause of action between private parties asserting a right to enjoin a drug testing program based on the article I, section 1, right to privacy (7 Cal.4th at p. 9), we view the court’s sweeping conclusions about this right as applicable to any assertion of the right under the Privacy Initiative. Those conclusions are readily adaptable to the case at hand.
 

 [8]
 

 Hill
 
 sets forth additional facets of a California Constitution, article I, section 1, privacy case as follows:
 

 “A defendant may prevail in a state constitutional privacy case by negating any of the three elements just discussed or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests. Plaintiff, in turn, may rebut a defendant’s assertion of countervailing interests by showing there are feasible and effective alternatives to defendant’s conduct which have a lesser impact on privacy interests. Of course, a defendant may also plead and prove other available defenses, e.g., consent, unclean hands, etc., that may be appropriate in view of the nature of the claim and the relief requested.
 

 “The existence of a sufficient countervailing interest or an alternative course of conduct present threshold questions of law for the court. The relative strength of countervailing interests and the feasibility of alternatives present mixed questions of law and fact. Again, in
 
 *1307
 
 cases where material facts are undisputed, adjudication as a matter of law may be appropriate.” (7 Cal.4th at p. 40.)
 

 In light of the conclusions we reach on the basis of the first two elements of the California privacy right, we do not apply these additional principles in this case.
 

 [9]
 

 Bloom
 
 also decided the regulation question under former article I, section 2, relating to political power (see now art. n, § 1).