[No. B134479. Second Dist., Div. Three. Jan. 24, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID REYES LUERA, Defendant and Appellant.

COUNSEL

Thomas Hunter Russell and Robert A. Wynn for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Theresa A. Cochrane, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Defendant and appellant, David Reyes Luera, appeals from the judgment entered following his conviction, by court trial, for felony possession of child pornography (Pen. Code, § 311.11, subd. (b)).[1] Sentenced to a term of three years' probation, he claims there was trial error.

The judgment is affirmed.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence established the following.

On April 24, 1998, Officers William Dworin and Maria Elena Teague[2] of the Los Angeles Police Department's sexually exploited child unit, along with other officers, went to defendant Luera's house to execute a search warrant. Dworin stayed with Luera in the living room, while Teague went into a back room that was being used as an office. There were several computers in this room. Dworin advised Luera of his *Miranda*[3] rights, which Luera waived. Dworin, who had arrested Luera for possession of child pornography in 1995, explained that police had learned he was downloading child pornography from the Internet. Luera admitted he had been.

Detective Galindo, who had gone into the back room with Teague, came out and told Dworin he was having trouble turning on the computer. Dworin asked Luera if he would help. Luera agreed and turned on his computer. Dworin asked Luera to show them the child pornography. On his computer screen, Luera produced an image of child pornography. Dworin printed the image and arrested Luera.

Officer Michael Brausam was a member of the computer crimes unit. Teague gave him two hard drives taken from the computers in Luera's house. On the hard drives, Brausam saw "some images that appeared to be child pornography," which he described as images of "an adult male with a female toddler," and "adults and what appeared to be juveniles having sex." Brausam printed out images from the hard drives,[4] and he described some of the images as follows: two children, aged five or less, "having sex"; "an adult standing over a female juvenile under the age of 5 holding his penis"; an adult male orally copulating a juvenile; and, "a juvenile female naked, sitting with her vagina touching a male adult penis." The images had been stored on the computers in a "JPEG" format, which is a common way of distributing images over the Internet. Such images can be transferred from a

---

[2]At the time of the incident, Officer Teague went by her given name, Pirro.

[3]*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

[4]Brausam assembled these photographs and other documents into a three-ring binder, which was entered into evidence.

diskette or a CD-ROM to a hard drive, downloaded from an Internet site, or received as an e-mail transmission.

Luera testified only in connection with a motion to suppress evidence.

CONTENTIONS

1. Section 311.11 is unconstitutional.

2. There was insufficient evidence Luera knowingly possessed child pornography.

3. The trial court erred in refusing to either quash the search warrant or order disclosure of a confidential informant's identity.

DISCUSSION

1. *Constitutionality of section 311.11.*

Luera challenges the constitutionality of section 311.11, the statute prohibiting possession of child pornography, arguing that it contains an improper delegation of legislative power in violation of article IV, section 1, of the California Constitution, that it is vague and arbitrary, and that it violates his right to privacy under article I, section 1, of the California Constitution. These claims are meritless.

Section 311.11 provides:

"(a) Every person who knowingly possesses or controls any matter, representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under the age of 18 years, knowing that the matter depicts a person under the age of 18 years personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4, is guilty of a public offense and shall be punished by imprisonment in the county jail for up to one year, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both the fine and imprisonment.

"(b) If a person has been previously convicted of a violation of this section, he or she is guilty of a felony and shall be punished by imprisonment for two, four, or six years.

"(c) It is not necessary to prove that the matter is obscene in order to establish a violation of this section.

"(d) This section does not apply to drawings, figurines, statues, or any film rated by the Motion Picture Association of America, nor does it apply to live or recorded telephone messages when transmitted, disseminated, or distributed as part of a commercial transaction."

■ " ' ."To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . . Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." ' " (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].)

■ Luera contends section 311.11 is void because subdivision (d), the provision exempting any film rated by the Motion Picture Association of America (MPAA), constitutes an unconstitutional delegation of legislative power. He asserts "the statute on its face purports to convey to the [MPAA] . . . the *de jure* power to determine through its rating system whether or not the possession of a particular depiction of a person under the age of 18 years engaged in actual or simulated sexual conduct is, or is not, a crime." Luera complains that "in essence, a private trade association in the entertainment industry is granted carte blanche to determine what is or is not the banned contraband simply by attaching its rating."

This claim fails.[5] Even if section 311.11, subdivision (d), constituted such a delegation of authority, it would not necessarily violate the California Constitution. Article IV, section 1, provides: "The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum." An unconstitutional delegation of legislative authority occurs if the Legislature either leaves the resolution of fundamental policy issues to others or fails to provide adequate direction for the implementation of that policy. (*Kugler v. Yocum* (1968) 69 Cal.2d 371, 376-377 [71 Cal.Rptr. 687, 445 P.2d 303].) *Kugler* held that a law passed by the City of Alhambra establishing a policy of wage parity with firefighters in the City of Los Angeles was not an unconstitutional delegation of authority because the

---

[5]We disagree with the People's argument that section 311.11, subdivision (d), could not have applied to Luera because the pornographic images he possessed were not films. One of the categories covered by subdivision (a) is "any other computer-generated image that contains or incorporates in any manner, any film or filmstrip." That would seem to cover still images taken from a film.

fundamental policy issue had been decided by the legislative body, and that decision was not negated simply because a third party had a role in the law's implementation. (*Id.* at p. 379.) Here, section 311.11 contains a detailed description of the prohibited conduct, so the fact that some third party was delegated the task of determining which motion pictures violated the statute would not seem to be an impermissible delegation of authority.

In any event, and contrary to Luera's claim, it is clear that the MPAA has *not* been given the power to determine what is or is not contraband. Section 311.11, subdivision (d) does not give the MPAA power to determine that anything is illegal; it only gives the MPAA power to determine that something—a film carrying an MPAA rating—is not illegal. And even this last statement is too broad because subdivision (d) only gives MPAA the power to determine that *possession* of a rated film does not violate section 311.11. Section 311.11 is part of a larger statutory scheme (§ 311 et seq.) regulating the production, distribution and possession of both obscene material and child pornography. Although an MPAA rating would protect someone who purchased a film containing illegal child pornography from being prosecuted under section 311.11, it would not protect someone who hired the child actors (see § 311.4, subd. (b)) or someone who distributed the film (see § 311.2, subd. (b)).[6] Thus, an MPAA rating simply operates as a kind of affirmative defense under section 311.11 only, protecting putatively innocent purchasers of commercial films.

Luera contends section 311.11 is unconstitutionally vague because he "had no way of knowing whether sexually oriented materials which came into his possession were rated by the MPAA." But if so, that would simply mean he had no reason to rely on the MPAA exemption. As explained above, the lack of an MPAA rating is not what makes a film illegal. Luera also argues he was "prosecuted because the pornography he allegedly possessed was not 'rated' by the industry association," "whereas if he had purchased an MPAA-rated film at a video store that contained exactly the same image, he would be a free man." This argument is completely disingenuous. We have viewed the images Luera had on his computers, and it is obvious that this kind of hard-core child pornography could not possibly

---

[6]According to a 1997 article by the then Chairman of the Classification and Rating Administration (CARA), which administers the MPAA ratings system, the familiar G/PG/PG-13/R/NC-17 scheme merely purports to rank films "based on a determination of what most American parents would consider appropriate for viewing by children." (Mosk, *Motion Picture Ratings in the United States* (1997) 15 Cardozo Arts & Ent. L.J. 135, 137.) Thus, "an 'NC-17' rating does not suggest that the picture is obscene or pornographic in the legal sense. It simply means that most parents would consider the film off-limits for viewing by their children." (*Id.* at p. 141, fn. omitted.) Films are voluntarily submitted for MPAA rating. X-rated films are not evaluated; the "X" is self-imposed by the filmmaker.

have come from any commercially released, MPAA-rated film.[7] Indeed, had most of these images depicted only adults engaging in exactly the same conduct, we dare say Luera could not have believed they were ever part of an MPAA-rated film.

Luera contends his conviction was arbitrary and violated substantive due process principles because section 311.11 "treats the same pictures [he possessed] as non-exploitative [of children] if rated by the MPAA." Not so. As noted above, an MPAA rating does not immunize any person involved in making or distributing illegal child pornography, because those persons can be prosecuted under other sections of the statutory scheme. Luera spends much effort distinguishing his case from *People v. Kongs* (1994) 30 Cal.App.4th 1741 [37 Cal.Rptr.2d 327], in which a defendant convicted of violating section 311.11 had been an active participant in creating child pornography. But *Kongs* itself affirmed a state's legitimate interest in prohibiting the mere possession of child pornography: "While the right to possess adult pornography in the privacy of one's home is protected (*Stanley v. Georgia* (1969) 394 U.S. 557 [22 L.Ed.2d 542, 89 S.Ct. 1243]), this right does not attach to the possession of child pornography. In *Osborne* v. *Ohio*[, *supra*,] 495 U.S. 103 . . . , the Supreme Court limited *Stanley* and upheld a state statute outlawing the viewing or possession of child pornography in one's home against a First Amendment challenge." (*People v. Kongs, supra,* 30 Cal.App.4th at p. 1757.)

Finally, Luera contends his mere possession of child pornography is protected by article I, section 1, of the California Constitution, which provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, *and privacy*." (Italics added.) The italicized words were added in 1972 by the so-called Privacy Initiative. ▪ But this provision is not violated unless the case involves a legally protected privacy interest and a reasonable expectation of privacy. (*People v. Wiener* (1994) 29 Cal.App.4th 1300, 1306 [35 Cal.Rptr.2d 321], citing *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39-40 [26 Cal.Rptr.2d 834, 865 P.2d 633].) The

---

[7]In this regard, we note the following language from *Osborne v. Ohio* (1990) 495 U.S. 103 [110 S.Ct. 1691, 109 L.Ed.2d 98], in which the United States Supreme Court affirmed a conviction for merely possessing child pornography. ". . . Osborne had notice that his conduct was proscribed. It is obvious . . . that the goal of the statute is to eradicate child pornography. . . . That Osborne's photographs of adolescent boys in sexually explicit situations constitute child pornography hardly needs elaboration. Therefore, although [the provision] as written may have been imprecise at its fringes, someone in Osborne's position would not be surprised to learn that his possession of the four photographs at issue in this case constituted a crime." (*Id.* at p. 116 [110 S.Ct. at p. 1700].)

California right to privacy is not absolute because it may have to yield to compelling state interests (*People v. Wharton* (1991) 53 Cal.3d 522, 563 [280 Cal.Rptr. 631, 809 P.2d 290]), and not every assertion of privacy must be overcome by a compelling interest. "Where the case involves an obvious invasion of an interest fundamental to personal autonomy, e.g., freedom from involuntary sterilization or the freedom to pursue consensual familial relationships, a 'compelling interest' must be present to overcome the vital privacy interest. If, in contrast, the privacy interest is less central, or in bona fide dispute, general balancing tests are employed." (*Hill v. National Collegiate Athletic Assn., supra,* 7 Cal.4th at p. 34, fn. omitted.)

■ *Wiener* analyzed California's privacy right in the context of possessing obscene materials. After ruling that "under the Privacy Initiative . . . the defendants as distributors of obscene matter have standing to assert the privacy rights of their customers," *Wiener* held "as a matter of law there is no legally protected privacy interest in the distribution of obscene matter and there can be no reasonable expectation of privacy in circumstances involving the distribution of obscene matter." (*People v. Wiener, supra,* 29 Cal.App.4th at pp. 1306-1307, fn. omitted.) In reaching this conclusion, *Wiener* reasoned that the possession of "obscene matter [did not involve] any 'vital privacy interest' that could be seen as an 'interest fundamental to personal autonomy' " and rejected "the defendants' arguments to the contrary equating these rights to those involved in connection with contraception or abortion." (*Id.* at p. 1307.) "The purposes of this type of state regulation . . . remain just as valid when applied to a privacy right under the Privacy Initiative as when applied to a privacy right under the First and Fourteenth Amendments. In light of these accepted regulatory purposes and the absence of any conflict between regulation and the purposes of the Privacy Initiative, the mere fact the Privacy Initiative right is broader than the federally protected privacy right does not call for a conclusion [that] obscene matter in the hands of a distributor cannot be regulated as by section 311.2." (*Id.* at p. 1311.)

If the possession of mere obscenity does not involve the vital privacy interest necessary to trigger a countervailing compelling state interest, then certainly child pornography does not involve that vital privacy interest. And if the Privacy Initiative does not provide any greater protection than the First Amendment does in this situation, then section 311.11 is not an unconstitutional deprivation of Luera's privacy rights because *Osborne* held that the First Amendment does not forbid laws criminalizing the mere possession of child pornography. "Given the gravity of the State's interests in this context, we find that Ohio may constitutionally proscribe the possession and viewing of child pornography." (*Osborne v. Ohio, supra,* 495 U.S. at p. 111 [110 S.Ct. at p. 1697].)

Therefore, we reject all of Luera's attempts to strike down section 311.11 on constitutional grounds.

2. *Evidence of knowing possession.*

■ Luera contends there was insufficient evidence he knowingly possessed the images of child pornography found on his computer. This claim is meritless.

Officer Dworin testified Luera admitted possessing images of child pornography and admitted that he had downloaded these images from the Internet. When Dworin asked Luera to show them child pornography he had on the computer, Luera accessed such an image and displayed it on his computer screen. This evidence was sufficient to permit a reasonable trier of fact to conclude beyond a reasonable doubt that Luera knowingly possessed the images of child pornography found on his computers' hard drives.

3. *Motion to quash search warrant or disclose informant's identity.*

■ Luera contends the trial court erred by refusing to either quash the search warrant or order the disclosure of a confidential informant's identity. This claim is meritless.

In the affidavit in support of her request for a search warrant, Officer Teague stated: "Your Affiant on March 25, 1998, received information from a citizen informant, who wishes to remain anonymous, that David Rey Luera who resides at 7928 Sangamon Avenue in Sun Valley, was communicating with a fifteen-year-old-male, via the Internet. The Internet correspondence between Luera and the fifteen-year-old described sexual activity they had been involved in. Luera expressed to the minor that he enjoyed the oral and anal sex they had on a prior occasion. The citizen informant also informed your Affiant that Luera has child pornography on his computer and has a sexual preference for teen boys. The citizen informant last saw this material in February of 1998." The search warrant was issued.

Luera moved to traverse the search warrant affidavit and to suppress the evidence resulting from the search. Attached to the motion was Luera's declaration that no one else used or had access to his computer in February 1998. At the hearing on the motion, Luera testified he did not show anyone images of child pornography on his computer in February 1998, and that no one else had used his computer. Officer Teague testified she first became aware of Luera on March 25, 1998, when she received a telephone call from a citizen informant. Teague had never spoken to this informant, and she had

never talked about Luera to Officer Dworin, who was her supervisor. The following colloquy ensued:

"Q What did the person tell you when he or she called on the 25th?

"A The informant told me that they [*sic*] had knowledge that an individual by the name of David Luera was involved in Internet communications and child pornography.

"Q Okay. Did they tell you anything else?

"A Yes.

"Q What else did this person tell you?

"A They believed that he had a prior conviction for child pornography.

"Q Anything else?

"A Those are the relevant facts.

"Q So that's the sum total of what this person told you?

"A Correct.

"Q Did the person tell you that he or she had ever had access to Mr. Luera's computer?

"A Once again, if I disclose that much information, it would tend to identify the informant."

After an in camera hearing was held regarding this claim of privilege, the trial court concluded "there were [no] intentional misstatements made in the affidavit or any statements made with reckless disregard for the truth," and denied the motion to traverse. Defense counsel moved to quash the search warrant, arguing Teague's testimony failed to establish probable cause and contradicted her affidavit as to whether the informant claimed to have seen anything in February. The trial court denied the motion to quash, holding there was sufficient information in the affidavit to justify issuance of the search warrant. Defense counsel then moved for disclosure of the informant's identity. The trial court denied this motion too.

■ Generally, in order to prevail on a motion to traverse an affidavit, the defendant must demonstrate (1) that the affidavit included a false statement

made knowingly and intentionally, or with reckless disregard for the truth, and (2) that the allegedly false statement was necessary to the finding of probable cause. (*Franks v. Delaware* (1978) 438 U.S. 154, 155-156 [98 S.Ct. 2674, 2676, 57 L.Ed.2d 667]; *People v. Hobbs* (1994) 7 Cal.4th 948, 974 [30 Cal.Rptr.2d 651, 873 P.2d 1246].) If the trial court finds the search warrant affidavit was not materially false, the court simply reports this conclusion to the defendant and enters an order denying his motion to traverse the warrant. (*People v. Hobbs, supra,* at p. 974.) If a defendant moves to quash a search warrant, the reviewing court must determine whether, under the totality of the circumstances presented to the magistrate, there was a fair probability that contraband or evidence of a crime would be found at the location named in the warrant. (*Id.* at p. 975.)

 Luera argues that, because of the inconsistency between Teague's affidavit and her testimony, it is impossible to tell which version the trial court accepted as true when it denied the motions relating to the search warrant. However, the motion to traverse and the motion to quash were denied in two separate rulings. The trial court first denied the motion to traverse, expressly finding the affidavit did not contain any intentional or reckless misrepresentations. Then, in ruling on the motion to quash, the trial court held the information presented to the magistrate was sufficient to establish probable cause. (See *People v. Hobbs, supra,* 7 Cal.4th at p. 975.) Teague's testimony on the motion to traverse the search warrant affidavit was irrelevant to the motion to quash the search warrant because the trial court had already found there were no intentional or reckless misrepresentations. In any event, we disagree with Luera's assertion Teague's testimony was "directly contrary" to her affidavit. The transcript shows that Teague, in order to protect the informant's identity, was simply trying to avoid giving the details of how the informant discovered Luera had child pornography on his computer. Teague did not make any statements during her testimony that were in direct conflict with her affidavit.

Luera argues the trial court was required either to quash the warrant, if it credited Teague's testimony over her affidavit, or grant disclosure of the informant's identity if it credited her affidavit over her testimony. Not so. When ruling on a motion to quash a warrant, the trial court must look at the evidence presented to the magistrate. Here, the trial court found the affidavits in support of the search warrant were sufficient to establish probable cause. Luera does not challenge that conclusion. And once the trial court held there had been no misrepresentations in the affidavit, Teague's testimony became irrelevant to this issue.

Furthermore, the trial court properly denied Luera's motion to disclose the informant's identity. An informant is a material witness under Evidence Code section 1041 if it appears there is a reasonable possibility the

informant could give evidence on the issue of guilt which might result in a defendant's exoneration. (*People v. Wilks* (1978) 21 Cal.3d 460, 468-469 [146 Cal.Rptr. 364, 578 P.2d 1369].) "However, defendant's showing to obtain disclosure of an informant's identity must rise above the level of *sheer* or *unreasonable* speculation, and reach at least the low plateau of reasonable possibility." (*People v. Tolliver* (1975) 53 Cal.App.3d 1036, 1044 [125 Cal.Rptr. 905].) ▆▆ The People argue this test has not been met because the informant was not a percipient witness to the offense for which Luera was convicted, which was the possession of child pornography "[o]n or about April 24, 1998." Luera makes the fair point that, unlike an illegal drug, the consumption of pornography does not deplete the contraband, and therefore whatever the informant may have seen in February 1998 could have had a bearing on the question of guilt or innocence. But Luera's suggestion that it might have been the informant who downloaded the child pornography onto Luera's computer amounts to mere speculation. (See *People v. Tolliver, supra,* 53 Cal.App.3d at p. 1043.) In any event, any error in this regard was undoubtedly harmless because Luera admitted to Officer Dworin that he had downloaded the child pornography from the Internet.

## DISPOSITION

The judgment is affirmed.

Croskey, J., and Aldrich, J., concurred.