Filed 1/9/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DON L. MATHEWS et al., | B265990 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC573135) |
| v. | |
| KAMALA D. HARRIS, as Attorney General, etc., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael L. Stern, Judge. Affirmed.

Nelson Hardiman, Mark. S. Hardiman and Salvatore Zimmitti for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Douglas J. Woods, Assistant Attorney General, Marc A. LeForestier and S. Michele Inan, Deputy Attorneys General, for Defendant and Respondent Kamala Harris, as Attorney General, etc.

Hurrell Cantrall, Thomas C. Hurrell, Melinda Cantrall and Maria Z. Markova for Defendant and Respondent Jackie Lacey, as District Attorney, etc.

_____

The Child Abuse and Neglect Reporting Act (CANRA) requires certain individuals, including family therapists and clinical counselors, to report to law enforcement or child welfare agencies patients who disclose that they have developed, downloaded, streamed, or accessed child pornography through electronic or digital media. (Pen. Code, § 11164 et seq.)[1] Plaintiffs are mandated reporters. They assert that CANRA violates their patients' constitutional right to privacy. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 1.)

CANRA withstands plaintiffs' challenge. The privacy interest of patients who communicate that they watch child pornography is outweighed by the state's interest in identifying and protecting sexually abused children. There is no fundamental right at issue in this case, and CANRA satisfies the rational basis test for determining the validity of a legislative enactment. The trial court properly dismissed the complaint.

## THE PARTIES

Plaintiff William Owen is a certified alcohol and drug counselor who works with sex addicts as a counselor and intake director at treatment programs. Plaintiffs Don Mathews and Michael Alvarez are licensed marriage and family therapists. Mathews is founder and director of Impulse Treatment Center, the largest outpatient treatment center for sexual compulsion/addiction in the United States. Alvarez has a private practice specializing in addictions, including sexual addiction. Plaintiffs claim standing as California taxpayers seeking to prevent unlawful expenditures of taxpayer funds.

Defendant Kamala D. Harris, Attorney General of California (AG), enforces CANRA; maintains the Child Abuse Central Index (CACI), a statewide databank of child abuse reports; and disseminates information from the databank to government agencies and law enforcement authorities. (§§ 11165.9, 11166.3, 111170.) Defendant Jackie Lacey, District Attorney for the County of Los Angeles (DA), is responsible for

---

[1]     Unlabeled statutory references in this opinion are to the Penal Code.

prosecuting a therapist or counselor who fails to report as child abuse the viewing or downloading of child pornography by a patient.  (§ 11166, subd. (c).)

**THE COMPLAINT**

The Legislature amended CANRA in 2014, in Assembly Bill 1775 (AB 1775). On February 20, 2015, shortly after the law took effect, plaintiffs filed a complaint seeking declaratory relief based on alleged constitutional violations.  They request an injunction to prevent the enforcement of AB 1775.

Plaintiffs brought suit because CANRA creates an exception to the patient-psychotherapist privilege by including licensed psychologists and therapists as "mandated reporters" who are compelled to disclose known or suspected child abuse to law enforcement authorities.  A mandated reporter who fails to do so is subject to criminal penalties and license suspension or revocation.

Plaintiffs Mathews and Alvarez have treated numerous patients for sexual addiction, compulsivity and other sexual disorders, who admit downloading and viewing child pornography on the Internet.  Based on their training and experience, plaintiffs do not believe those patients present a serious danger of engaging in "hands-on" sexual abuse or exploitation of children or the distribution of child pornography:  they typically have no criminal history, have never expressed a sexual preference for children, and voluntarily participate in psychotherapy to treat their disorder, which often involves compulsive viewing of all kinds on the Internet.

Mathews and Alvarez have also treated patients for sexual attraction to children (including pedophilia), who admit to downloading and viewing child pornography. Plaintiffs do not believe that this group presents a serious danger of engaging in "hands-on" sexual abuse or exploitation of children or the active distribution of child pornography to others.  "These patients typically have no prior criminal record or history of 'hands-on' sexual abuse of children, no access to children in their home or employment, no history of 'hands-on' sexual abuse or exploitation of children, and often express disgust and shame about their sexual attraction to children for which they are actively and voluntarily seeking psychotherapy treatment."

3

The complaint states, "Plaintiffs' clinical experience that many of their patients have admitted downloading or viewing child pornography during therapy for sexual disorders, but do not present a serious danger of 'hands-on' sexual abuse of children, correlates with the wide and easy availability of such illegal images on the Internet." Plaintiffs cite psychiatric reports and journals, and a 2012 report to Congress from the United States Sentencing Commission, to support their claim that there is no empirical evidence that a patient viewing child pornography actually engages in "hands-on" sexual abuse or exploitation of children.

The complaint alleges that statements made to Mathews and Alvarez during treatment are confidential and privileged, falling under the right of privacy guaranteed by the California Constitution. Plaintiffs also identify a "fundamental privacy right in non-disclosure of personal medical information" as a personal liberty guaranteed by the federal Constitution. If compelled to report patients who admit to downloading or viewing child pornography on the Internet, even if the patients present no serious danger of reportable "hands-on" sexual abuse or exploitation of children, plaintiffs and other California psychotherapists will be complicit in violating patients' constitutional rights, or risk a criminal misdemeanor conviction and the revocation of their licenses.

Plaintiffs allege that AB 1775 will destroy patient trust that communications made during therapy will be kept confidential, induce patients to cease therapy, make them unlikely to disclose intimate details needed to provide effective therapy, or deter existing or potential patients with serious sexual disorders from obtaining therapy at all. Apart from allegedly violating the privacy rights of adult patients who view child pornography, the statute allegedly impinges on the rights of minor patients who view sexually explicit "sexting selfies" by another minor over a cell phone.

Given the international scale of Internet pornography, plaintiffs allege that state authorities will not be able to identify and protect victims residing in California. CANRA's reporting requirement does not extend to child abuse victims outside of California's territorial jurisdiction. Thus, plaintiffs assert, California citizens' right to privacy should not be curtailed based on the extremely slim possibility that state

4

authorities can identify California victims, as opposed to children subjected to sexual abuse somewhere in the world.

Plaintiffs allege that CANRA is generally limited to mandated reporting of "hands-on" or "contact" sexual abuse and sexual exploitation of children. AB 1775 does not substantially further CANRA's purpose because a patient's viewing of child pornography does not constitute evidence that the patient has engaged in "hands-on" abuse or exploitation of children. Any indirect emotional harm to a child (perhaps now an adult) unknown to the viewer does not fall within CANRA's definition of child abuse.

Plaintiffs allege that AB 1775 transforms CANRA's mandated reporting scheme to identify and protect child abuse victims "into a prophylactic vehicle to identify patients who may pose a potential danger of engaging in 'hands-on' sexual abuse of children because they have viewed child pornography." CANRA does not mandate reporting of possible danger. Rather, CANRA requires that a mandated reporter have knowledge of or observe a child whom the reporter knows or reasonably suspects is the victim of child abuse or neglect. No reliable empirical evidence supports a belief that child pornography viewers present a serious danger of engaging in "hands-on" sexual abuse of children in the absence of other risk factors.

### THE DEMURRERS

The AG filed a demurrer to the complaint, arguing that the purpose of AB 1775 is to help law enforcement identify abused children by requiring therapists to report patients who download, stream or electronically access child pornography. This duty does not violate state constitutional privacy rights under *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1 (*Hill*), which requires a legally protected privacy interest, a reasonable expectation of privacy in the circumstances, and a serious invasion of privacy. Patients have no reasonable expectation of privacy in communications to therapists or counselors about accessing child pornography, and the state has a countervailing interest in identifying and protecting children from sexual exploitation by consumers of child pornography as well as those who are involved in its production.

The AG argued that any difficulty in identifying children within or outside California does not require a different result because the Legislature exercised its judgment that identification of some children is sufficient. Section 11170, subdivision (d) authorizes the disclosure of information in CACI to out-of-state authorities to assist in identifying as many of the abused children as possible.

The AG further argued that AB 1775 does not violate the federal constitutional right of privacy under standards articulated by the United States Supreme Court in *Whalen v. Roe* (1977) 429 U.S. 589, 591-606 (*Whalen*), because CANRA is a reasonable exercise of California's broad police powers to combat child sexual exploitation. The AG asserted that CANRA's reporting requirement of teenage "sexting" does not render AB 1775 unconstitutional as applied to minors.

The DA also filed a demurrer, arguing that the Legislature has used mandatory reporting statutes to identify and protect child abuse victims since 1965. (Stats. 1965, ch. 1171, § 2, p. 2971.) The expansion of mandated reporters categories shows that the Legislature intended child abuse reporting obligations to take precedence over the physician-patient privilege or the psychotherapist-patient privilege.

The DA argued that no protected privacy interest is raised in the complaint. Citing *People v. Younghanz* (1984) 156 Cal.App.3d 811, 816 (*Younghanz*), the DA asserted that there is no fundamental right to seek any particular form of medical treatment, including psychiatric treatment, in California. Relying on *People v. Luera* (2001) 86 Cal.App.4th 513, 522 (*Luera*), the DA contended that an individual has no protected privacy interest in the possession of Internet child pornography. Plaintiffs' claim about "sexting" minors is unavailing: minors have no fundamental right to produce or possess child pornography, including sexually explicit images of other minors.

The DA asserted that there is no reasonable expectation of privacy in the illegal activity of viewing child pornography by adults or minors. Plaintiffs cannot establish a serious invasion of privacy: mandated reporters need only submit a report without details obtained from the patient. Any invasion of privacy is justified by the state's compelling interest in preventing child abuse, which outweighs patients' interests in seeking a cure.

6

Difficulty in identifying California children does not negate the state's legitimate interest in investigating and attempting to do so. The absence of evidence of "hands-on" abuse does not negate the state's legitimate interest because simply viewing child pornography causes harm to the victim. Accessing child pornography is not a victimless crime. In *Osborne v. Ohio* (1990) 495 U.S. 103, 111 (*Osborne*), the Supreme Court recognized that the simple viewing of online images causes continuing harm to child pornography victims.

The DA observed that there is no federal constitutional right to informational privacy. Although the California Supreme Court recognized in *In re Lifschutz* (1970) 2 Cal.3d 415, 431-432 (*Lifschutz*), that the psychotherapist-patient privilege falls within a "zone of privacy" guaranteed by the Bill of Rights, the Court recently acknowledged in *People v. Gonzales* (2013) 56 Cal.4th 353, 384 (*Gonzales*), that *Lifschutz* was decided 40 years ago, without the United States Supreme Court definitively determining in the interim that the federal Constitution embodies a general right of informational privacy.

The DA wrote that AB 1775 satisfies the rational basis standard of constitutionality. It is a proper exercise of the police power because California has an interest in protecting the nation's children *and* the children residing in this state. AB 1775 furthers the purpose of child abuse protection and prevention.

## PLAINTIFFS' OPPOSITION

Plaintiffs argued that demurrers are not a correct procedural device to challenge the merits of the declaratory relief causes of action. Even if treated as premature motions for judgment on the pleadings, the demurrers should be overruled because AB 1775 violates the constitutional privacy rights of plaintiffs' patients. The state Constitution requires a "compelling" interest to justify violation of the psychotherapist privilege. The United States Supreme Court has recognized a fundamental privacy right in nondisclosure of personal medical information guaranteed by the due process clause of the Fourteenth Amendment of the federal Constitution.

Plaintiffs argued that patients have a reasonable expectation of privacy in admitting to a psychotherapist that they have viewed child pornography. This reasonable

7

expectation would be at its highest when patients communicate to a psychotherapist during treatment that they have committed a crime.

Plaintiffs disagreed that only a "rational basis" for the privacy violation is sufficient. Plaintiffs conceded that California "has a compelling interest in identifying and protecting children from abuse and neglect." However, plaintiffs believe that the compelling interest in CANRA's mandated reporting by a psychotherapist is limited to "known or suspected 'hands-on' sexual abuse or exploitation of children in real life even though such reporting violates the patient's reasonable expectation that his psychotherapy communications would remain confidential and private."

Plaintiffs asserted that AB 1775 does not substantially or rationally further CANRA's purpose of identifying and protecting children from sexual abuse and is not narrowly tailored to do so. Any benefits of disclosing communications about viewing Internet child pornography are outweighed by the privacy rights of patients seeking psychotherapy and the strong public interest in ensuring citizens can have confidential treatment for mental health issues, including sexual disorders, without fear of criminal prosecution. The new reporting requirement will deter patients from seeking psychotherapy and will not protect children from actual sexual abuse. Plaintiffs pointed to the lack of correlation between viewing and the likelihood of sexual abuse of the child, and noted that law enforcement's ability to identify and protect the children is "exceedingly remote." Plaintiffs describe mandated reporting as "effectively useless" and argue that the scales should be tipped in favor the countervailing privacy rights of psychotherapy patients.

Plaintiffs observed that the case of *Whalen*, *supra*, 429 U.S. 589, involved a New York regulatory scheme mandating disclosure of patients who received prescriptions for Schedule II drugs. Here, plaintiffs challenge a California statute that invades a patient's constitutional right to privacy regarding communications to a psychotherapist. The New York statute did not require a criminal investigation of every patient who received a prescription for drugs. By contrast, AB 1775 subjects patients who view Internet child pornography to a mandatory child abuse investigation and possible criminal prosecution

8

for child pornography possession. New York State had a compelling interest in thwarting and deterring drug abuse. But California's mandated reporting requirement, aimed at identifying and protecting children from actual abuse, is not substantially furthered by AB 1775, because plaintiffs believe that their patients have not abused children and pose no danger of doing so.

Citing *Planned Parenthood Affiliates v. Van de Kamp* (1986) 181 Cal.App.3d 245 (*Planned Parenthood*), plaintiffs asserted that AB 1775 is unconstitutional as applied to "sexting" between consenting minors. AB 1775 is overbroad and unconstitutionally invades the minor patients' right to privacy in psychotherapy communications about images between consenting minors that do not involve sexual abuse or exploitation.

## THE TRIAL COURT'S RULING

The trial court determined that the complaint may be resolved on demurrer. The court found that the issues of whether there is a reasonable expectation of privacy, and the countervailing state interest, are legal questions to be decided by the court.

The court concluded that AB 1775 does not violate patients' privacy rights under the California Constitution. First, there is no recognized absolute fundamental privacy right to possess or view child pornography. The conduct is criminal in California and is not constitutionally protected. (§§ 311.11 & 11164 et seq.; *Luera*, *supra*, 86 Cal.App.4th at p. 522.) Second, there is no reasonable expectation of privacy in psychotherapy treatment or any form of treatment. The allegations and plaintiffs' arguments are conclusory and unsupported by authority. Patients seeking therapy for downloading Internet child pornography do so with knowledge that the conduct will be reported and may be prosecuted. They also know that their conduct is illegal and socially unacceptable. There is no "zone of privacy" for illegal conduct and as a matter of law there is no reasonable expectation of privacy involved in distributing obscene matter. Third, mandated disclosures that patients have viewed child pornography on the Internet do not entail "a serious invasion of privacy." California has a compelling and legitimate public interest in exposing and prosecuting child pornography. The Legislature has expressly stated its intent that the reporting obligations take precedence over the

9

psychotherapist-patient privilege. AB 1775 is a justifiable and permissive means to combat child abuse and child pornography that outweighs patients' treatment interests.

The trial court concluded that AB 1775 does not violate the Fourteenth Amendment of the United States Constitution, which has never been interpreted to provide a fundamental right to informational privacy. Because there is no fundamental right at issue, the rational basis test for reviewing the validity of legislation applies.

The Legislature sought to prevent the sexual exploitation of children arising from downloading, streaming or accessing child pornography on the Internet. AB 1775 is rationally related to this purpose and designed to assist the state in preventing and eradicating the criminal possession and distribution of child pornography. The law is an appropriate means to accomplish the legislative purpose and prevails over any claim by plaintiffs that patients' rights are violated by reports and possible identification of child pornography viewers.

The trial court sustained the demurrers to the complaint without leave to amend and dismissed the action with prejudice. Plaintiffs appeal from the signed dismissal order. The court later entered judgment for defendants.

### DISCUSSION

## I. Appeal and Review

Appeal lies from a signed order of dismissal after demurrers are sustained without leave to amend. (Code Civ. Proc., §§ 581d, 904.1, subd. (a)(1); *Serra Canyon Co. v. California Coastal Com.* (2004) 120 Cal.App.4th 663, 667.) Review is de novo. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115.) We accept the truth of properly pleaded material facts, but not contentions, deductions or conclusions of fact or law; we may also consider matters subject to judicial notice. (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)[2]

_____

[2] Respondents do not question plaintiffs' standing to sue. One may not generally claim standing to vindicate the constitutional rights of others. (*Barrows v. Jackson*

10

## II. **The Purpose of CANRA and AB 1775**

The purpose of CANRA "is to protect children from abuse and neglect": all persons participating in any investigation of suspected child abuse or neglect "shall consider the needs of the child victim and shall do whatever is necessary to prevent psychological harm to the child victim." (§ 11164.) This goal is accomplished through a comprehensive statutory scheme which, among other things, requires child protective agencies to forward child abuse reports to the California Department of Justice, which maintains CACI. (§§ 11169, 11170.) The reports provide a means "to increase communication and the sharing of information relating to child abuse and neglect among the agencies responsible for the welfare of children. (§ 11166.3, subd. (a).)" (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 174.)

Section 11165.7 enumerates 44 categories of persons whose professions bring them within the auspices of CANRA as mandated reporters. A mandated reporter is required to report known or suspected instances of child abuse or neglect to government agencies. (§§ 11165.9, 11166, subd. (a); *B.H. v. County of San Bernardino*, *supra*, 62 Cal.4th at p. 185.) Plaintiffs, who are psychotherapists and a drug and alcohol counselor, are among the professionals who must report known or suspected abuse or neglect of a child. (§§ 11165.7, subd. (a)(21), (38), 11166, subd. (a).)

"Child abuse or neglect" includes sexual abuse. (§ 11165.6.) "Sexual abuse" is sexual assault or sexual exploitation. (§ 11165.1.) "Sexual exploitation" includes "[a] person who depicts a child in, or who knowingly develops, duplicates, prints, downloads, streams, accesses through any electronic or digital media, or exchanges, a film, photograph, videotape, video recording, negative, or slide in which a child is engaged in an act of obscene sexual conduct, except for those activities by law enforcement and

---

(1953) 346 U.S. 249, 255.) However, courts have allowed lawsuits by mandated reporters raising constitutional challenges to CANRA. (See *Planned Parenthood*, *supra*, 181 Cal.App.3d 245.)

11

prosecution agencies and other persons described in subdivisions (c) and (e) of Section 311.3." (§ 11165.1, subd. (c)(3).)

Former section 11165.1, subdivision (c)(3) defined "sexual exploitation" as "[a]ny person who depicts a child in, or who knowingly develops, duplicates, prints, or exchanges, any film, photograph, video tape, negative, or slide in which a child is engaged in an act of obscene sexual conduct . . . ." (Stats. 2000, ch. 287, § 21, p. 2533.) In 2014, the state Legislature unanimously passed AB 1775 to update the definition of "sexual exploitation" to include downloading or streaming material on the Internet or a cellular phone for the purpose of mandated reporting under CANRA. According to the author of AB 1775, the bill would "'further ensure the protection of children from the proliferation of sexual exploitation through Internet child pornography. The State Legislature has a duty to ensure it does everything within its power to make certain the most vulnerable of our society, our children, are protected.'" (Off. of Assem. Floor Analysis (2013-2014 Reg. Sess.) June 10, 2014, p. 3.)

The updated definition of "sexual exploitation" is meant "to reflect modern technology" by making "additional, purely technical revisions" to section 11165.1, subdivision (c). (Sen. Com. on Public Safety on Child Abuse: Mandatory Reporting (June 10, 2014) pp. 1-2, Rep. on AB 1775 as amended May 13, 2014.) The statute was revised because the former statute's mandated reporting requirements were inadequate to protect against Internet child pornography and its concomitant sexual exploitation. (*Id*. at p. 4.) The former statute confused mandated reporters about whether reporting downloading and streaming of child pornography was required in the same manner that they were required to report printing or copying such materials. (*Ibid*.) In accordance with legislative intent, section 11165.1 now defines "sexual exploitation" as downloading, streaming or accessing child pornography by electronic or digital media, which triggers CANRA's mandated reporting requirements.

## III. <u>Challenges to the Validity of a Statute</u>

At issue in this case is the validity of the Legislature's decision to expand the definition of "*sexual exploitation*" in section 11165.1, subdivision (c) to include

12

downloading and streaming of child pornography from the Internet. A party challenging the constitutionality of a statute carries a heavy burden. The courts will presume a statute is valid unless its unconstitutionality "'clearly, positively and unmistakably appears'"; mere doubt is not sufficient reason for a judicial declaration of invalidity. (*In re Ricky H.* (1970) 2 Cal.3d 513, 519; *People v. Fuiava* (2012) 53 Cal.4th 622, 696.)

Plaintiffs maintain that their challenge is to the text of the law (a "facial" challenge) and also to its application (an "as applied" challenge).

In a facial challenge to the constitutionality of a statute, the court considers only the text of the law, not its application to the particular circumstances of an individual. (*Zuckerman v. State Bd. of Chiropractic Examiners* (2002) 29 Cal.4th 32, 38-29; *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.) "To support a determination of facial unconstitutionality, voiding the statute as a whole, [plaintiffs] cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . . Rather, [plaintiffs] must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180-181; accord, *Arcadia Unified School Dist.* v. *State Dept. of Education* (1992) 2 Cal.4th 251, 267.)

An "as applied" challenge seeks relief from a facially valid statute or ordinance based on the manner in which the law has been applied, or an injunction against future application of the law owing to the impermissible manner it has been applied in the past. "It contemplates analysis of the facts of a particular case or cases to determine the circumstance in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right." (*Tobe v. City of Santa Ana*, *supra*, 9 Cal.4th at p. 1084.)

This is not an "as applied" challenge because plaintiffs have not alleged a pattern of unconstitutional enforcement, or even a single instance of enforcement. Because plaintiffs seek "only to enjoin *any* enforcement of the ordinance and did not demonstrate

13

a pattern of unconstitutional enforcement, the [lawsuit] must be considered as one which presented only a facial challenge to the ordinance." (*Id*. at p. 1089.)

## IV.  Plaintiffs' Claim for Invasion of Privacy Under the California Constitution

Plaintiffs contend that the Legislature's updated definition of "sexual exploitation" in AB 1775 violates privacy rights guaranteed by article I, section 1 of the California Constitution:  "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

The constitutional right to privacy "has never been absolute" (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 961), nor does it protect every act that might have some impact on personal privacy.  (*Hill*, *supra*, 7 Cal.4th at p. 37.)  Instead, the right of privacy "must be balanced against other important interests."  (*Ibid.*; *Jacob B.*, at p. 961.)  In some cases, the privacy concern may be outweighed by a supervening interest.  (*Doe 2 v. Superior Court* (2005) 132 Cal.App.4th 1504, 1520.)

The Supreme Court has explained the appropriate legal standard for determining whether a challenged action violates state constitutional privacy principles.  "The particular context, i.e., the specific kind of privacy interest involved and the nature and seriousness of the invasion and any countervailing interests, remains the critical factor in the analysis.  Where the case involves an obvious invasion of an interest fundamental to personal autonomy, e.g., freedom from involuntary sterilization or the freedom to pursue consensual familial relationships, a 'compelling interest' must be present to overcome the vital privacy interest.  If, in contrast, the privacy interest is less central, or in bona fide dispute, general balancing tests are employed."  (*Hill*, *supra*, 7 Cal.4th at p. 34.)

*Hill* sets forth three threshold elements for determining whether a complaint states a cause of action for violation of the state constitutional right of privacy.  "[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following:  (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy."  (7 Cal.4th at pp.  39-40.)  The purpose of the

14

threshold elements is "to screen out claims that do not involve a significant intrusion upon a privacy interest protected by the state constitutional privacy clause." (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 331.)

A defendant may negate any of the three elements of an invasion of privacy claim by pleading and proving as an affirmative defense that the invasion was justified by the furtherance of a countervailing interest. (*Hill*, *supra*, 7 Cal.4th at p. 40; *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 43-44.) "The plaintiff, in turn, may rebut a defendant's assertion of countervailing interests by showing there are feasible and effective alternatives to defendant's conduct which have a lesser impact on privacy interests." (*Hill*, at p. 40.)

The court decides whether a legally recognized privacy interest exists. (*Hill*, *supra*, 7 Cal.4th at p. 40.) The issue of whether there is a reasonable expectation of privacy under the circumstances is a mixed question of law and fact. (*Ibid*.) If the material facts are undisputed, the issues may be adjudicated as a matter of law. (*Ibid*. )

It should be noted that plaintiffs' opening brief is not written within the framework set forth in *Hill* to resolve the constitutional challenges raised by the complaint; namely, the threshold requirements. Rather, plaintiffs' opening brief is based primarily on factual claims, policy considerations behind CANRA and the psychotherapist-patient privilege and policy issues which are more appropriately considered in balancing the interests of the parties. In undertaking the analysis needed to resolve this appeal, we begin by applying the standards articulated in *Hill*.

### A. *The complaint does not allege a legally protected privacy interest.*

Defendants assert that plaintiffs cannot establish the first threshold element by identifying a specific, legally protected privacy interest. (*Hill*, *supra*, 7 Cal.4th at p. 35.) "Legally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities, without observation, intrusion, or interference ('autonomy privacy')." (*Ibid*.) Plaintiffs contend AB 1775's mandated reporting requirements

15

impermissibly infringe on patients' privacy rights in communicating that they have downloaded, streamed or accessed Internet child pornography to their psychotherapists. Thus, the complaint alleges an informational privacy interest in the right to preclude dissemination of confidential communications between psychotherapists and patients. The question is whether AB 1775 implicates a "protected privacy interest" that is within the auspices of the state constitutional privacy clause.

Confidential communications between a psychotherapist and a patient are privileged. (Evid. Code, § 1014; *Sorenson v. Superior Court* (2013) 219 Cal.App.4th 409, 445).[3] "The psychotherapist-patient privilege has been recognized as an aspect of the patient's constitutional right to privacy" protected by article I, section 1 of the California Constitution. (*People v. Stritzinger* (1983) 34 Cal.3d 505, 511 (*Stritzinger*).)

Our Supreme Court has recognized "the public interest in supporting effective treatment of mental illness and in protecting the rights of patients to privacy [citation], and the consequent public importance of safeguarding the confidential character of psychotherapeutic communication." (*Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 440 (*Tarasoff*); *Lifschutz*, *supra*, 2 Cal.3d at pp. 422-423.) "Confidential communications between psychotherapist and patient are protected in order to encourage those who may pose a threat to themselves or to others, because of some mental or emotional disturbance, to seek professional assistance. [Citation.]" (*Stritzinger*, *supra*, 34 Cal.3d at p. 511.) "'Psychoanalysis and psychotherapy are dependent upon the fullest revelation of the most intimate and embarrassing details of the patient's life . . . . Unless a patient . . . is assured that such information can and will be held in utmost confidence, he will be reluctant to make the full disclosure upon which diagnosis and treatment . . . depends.' [Citation.]" (*People v. Wharton* (1991) 53 Cal.3d 522, 555, quoting Sen. Judiciary Com. com., 29B West's Ann. Evid. Code (1966 ed.) foll. § 1014, p. 621.)

---

[3] A psychotherapist must claim the privilege on behalf of a patient. (*Scull v. Superior Court* (1988) 206 Cal.App.3d 784, 788, fn. 1 (*Scull*), citing Evid. Code, §§ 1014, subd. (c), 1015, and *Lifschutz*, *supra*, 2 Cal.3d at pp. 429-430.)

In light of public policies associated with "'the growing importance of the psychiatric profession in our modern, ultracomplex society,'" the psychotherapist-patient privilege is construed broadly in favor of the patient. (*Stritzinger*, *supra*, 34 Cal.3d at p. 511; *Story v. Superior Court* (2003) 109 Cal.App.4th 1007, 1014 (*Story*); *Grosslight v. Superior Court* (1977) 72 Cal.App.3d 502.) However, the psychotherapist-patient privilege, like the right to privacy, is not absolute. (*People v. Wharton*, *supra*, 53 Cal.3d at p. 563; *Stritzinger*, at p. 512; *Story*, at p. 1014.) "Even though a patient's interest in the confidentiality of the psychotherapist-patient relationship rests, in part, on constitutional underpinnings, all state 'interference' with such confidentiality is not prohibited." (*Lifschutz*, *supra*, 2 Cal.3d at p. 432.) The right to privacy must "yield in the furtherance of compelling state interests."[4] (*Stritzinger*, at p. 511, citing *Britt v. Superior Court* (1978) 20 Cal.3d 844, 855, *Jones v. Superior Court* (1981) 119 Cal.App.3d 534, 550, and *Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669, 680.)

The issue here is whether patients receiving therapy for sexual disorders have a right to keep confidential their admissions that they have violated the law by downloading, streaming or accessing child pornography from the Internet. However, plaintiffs have cited no applicable authority giving their patients the right to keep private information about whether they possessed Internet child pornography. Instead, applicable authorities support a contrary conclusion.

### 1. The conduct is illegal and not a protected activity.

The conduct for which plaintiffs seek constitutional protection (possession of child pornography) is criminalized in California. (§§ 311.3,[5] 311.11;[6] *In re Grant* (2014) 58

---

[4] As discussed below, the parties dispute whether a "compelling" state interest is the applicable interest in every case in which a privacy claim is asserted under a *Hill* analysis. Although plaintiffs concede that CANRA embodies compelling state interests, the parties dispute whether the appropriate analysis should be made under the compelling state interest standard or under a general balancing test.

[5] Section 311.3, subdivision (a) provides: "A person is guilty of sexual exploitation of a child if he or she knowingly develops, duplicates, prints, or exchanges any representation of information, data, or image, including, but not limited to, any film,

17

Cal.4th 469, 477 (*Grant*); *Luera*, *supra*, 86 Cal.App.4th at p. 522.)  The conduct is also criminalized under federal law.  (18 U.S.C. § 2251 et seq.)

We find guidance in *Luera*, which states that possession of Internet child pornography does not involve any "vital privacy interest."  (*Luera*, *supra*, 86 Cal.App.4th at p. 522.)  Luera was convicted of felony possession of child pornography after police confiscated computers in his home containing child pornography downloaded from the Internet.  (*Id.* at p. 517.)  He claimed that his conviction under section 311.11 for mere possession of child pornography violated his state constitutional right to privacy.  (*Luera*, at pp. 518, 521.)  In upholding the constitutionality of section 311.11, the *Luera* court concluded that the privacy clause was not violated because possession of "child pornography [certainly] does not involve [any] vital privacy interest," noting that under *Osborne*, *supra*, 495 U.S. at page 111, states "may constitutionally proscribe the possession and viewing of child pornography."  (86 Cal.App.4th at p. 522.)

*Luera* applies here.  The fact that a patient might share the information of his or her past criminal conduct in possessing Internet child pornography with a psychotherapist does not implicate a constitutionally protected privacy interest.

---

filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip that depicts a person under the age of 18 years engaged in an act of sexual conduct."

**6**     Section 311.11, subdivision (a) provides:  "Every person who knowingly possesses or controls any matter, representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under 18 years of age, knowing that the matter depicts a person under 18 years of age personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4, is guilty of a felony . . . ."

18

Plaintiffs assert that the Legislature "has never included possession of child pornography" in the definitions of child abuse, neglect, and sexual abuse. They contend that "the absence of child pornography possession [as prohibited by section 311.11] in CANRA's enumeration of statutory crimes constituting 'sexual exploitation' of children and the legislative history therefore indicate that A.B. 1775 was simply intended by the California Legislature to be a technology update to CANRA rather than a substantive expansion of the mandated reporting requirement for psychotherapists and other mandated reporters." According to plaintiffs, we should construe AB 1775 as "not [intending] to expand the mandated reporting requirement to the simple viewing or possession of child pornography."

Plaintiffs extrapolate on this argument by asserting that, prior to AB 1775, CANRA did not actually mandate that psychotherapists report patients who viewed or possessed child pornography. In support of this argument, plaintiffs point out that, in defining the term "sexual exploitation," section 11165.1, subdivision (c)(1) and (2) cites the specific criminalized conduct of "preparing, selling, or distributing obscene matter" (under § 311.2) and "employment of [a] minor to perform obscene acts" (under § 311.4). Plaintiffs also assert that section 311.11, which prohibits possession of child pornography "and, by implication, viewing of such illegal images," was not added to the list of reportable crimes when AB 1775 was enacted.

Plaintiffs reason that under well established principles of statutory construction, the Legislature's omission of section 311.11 in AB 1775's list of reportable conduct evidences an intent to not punish therapists for not reporting patients who view Internet child pornography. AB 1775 significantly and unintentionally "expanded the scope of CANRA reportable conduct to include persons who electronically view or possess child pornography without any role in its production or distribution."

Plaintiffs are correct that certain assumptions must be made about the Legislature's awareness of existing laws when it enacts and amends statutes. (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 146.) However, we disagree with plaintiffs' assertions that the existence of section 311.11 means that the Legislature was required to

19

specifically cite it in enacting AB 1775.  As plaintiffs concede, CANRA's definition of "sexual exploitation" in former section 11165.1, subdivision (c)(3) was consistent with former section 311.3, which criminalized the acts of duplicating, printing, or exchanging any film, photograph, videotape, video recording, negative or slide containing child pornography.  Both statutes were expanded to encompass computerized images of child pornography.

We assume that the Legislature was aware of the *Luera* case, upholding the conviction of a defendant charged under section 311.11 with possession of images of child pornography downloaded on a computer from the Internet.  (*Luera*, *supra*, 86 Cal.App.4th at pp. 518, 521-522.)  We are not persuaded that AB 1775 is invalid because the Legislature did not expressly cite section 311.11.  We assume that the Legislature was aware of section 311.3's definition of sexual exploitation and section 311.11 (as well as aware of *Luera*) criminalizing the possession and viewing of child pornography.  However, we do not make the extrapolations suggested by plaintiffs concerning the absence of a specific reference to section 311.11.  In enacting AB 1775, the Legislature clearly intended to make possession and viewing of child pornography reportable.

Since 1988, when former section 11165.1, subdivision (c)(3) became effective (Stats. 1987, ch. 1459, § 5, p. 5518), psychotherapists have had a duty to report that their patients engaged in the conduct of developing, duplicating, printing or exchanging child pornographic materials such as films, photographs, video tapes, negatives or slides. Notably, plaintiffs do not challenge the constitutionality of the former statute, which did not address the Internet.  Rather, the complaint alleges that the form of child pornography prohibited under former section 11165.1, subdivision (c)(3) has essentially been replaced by the proliferation of child pornography on the Internet.  Plaintiffs' implicit argument is that Internet child pornography is entitled to more protection than pornography that was regulated prior the enactment of AB 1775.  We discern no legal basis to distinguish between obscene images of children in prints or on the Internet, both of which involve "sexual exploitation" of the most vulnerable members of society.  Therefore, since 1988,

20

the psychotherapist-patient privilege has not afforded the sexual exploitation of children status as a legally protected privacy interest.

### 2. The privilege does not apply.

The informational privacy interest at stake in this case is subject to numerous exceptions. Our Supreme Court has held that the psychotherapist-patient privilege is subject to statutory exceptions that do not "impermissibly invade the patient's right to privacy" if narrowly construed. (*Stritzinger*, *supra*, 34 Cal.3d at p. 511, citing *Lifschutz*, *supra*, 2 Cal.3d at p. 432 [the patient-litigation exception to the psychotherapist-patient privilege in Evid. Code, § 1016 if narrowly drawn did not violate right to privacy] and *Jones v. Superior Court*, *supra*, 119 Cal.App.3d at p. 550 [state's interest in ascertaining truth in legal proceedings was substantial enough to compel disclosure of confidential information such as psychotherapy-patient communications].)

*Stritzinger* specifically considers the statutory exception to the psychotherapist-patient privilege in regard to mandatory reporting obligations under CANRA, which states: "Neither the physician-patient privilege nor the psychotherapist-privilege applies to information reported pursuant to this article in any court proceeding or administrative hearing." (§ 11171.2, subd. (b).) The Supreme Court explained: "Lest there be any doubt that the Legislature intended the child abuse reporting obligation to take precedence over the physician-patient or psychotherapist-patient privilege, [section 11171.2, subdivision (b)] explicitly provides an exception to these very privileges: . . . The Legislature obviously intended to provide specific exception to the general privileges set out in the Evidence Code (Evid. Code, §§ 994, 1014) so that incidents of child abuse might be promptly investigated and prosecuted." (*Stritzinger*, *supra*, 34 Cal.3d at p. 512.)

Thus, "CANRA expressly excepts information regarding suspected child abuse or neglect from the psychotherapist-patient privilege." (*Elijah W. v. Superior Court* (2013) 216 Cal.App.4th 140, 154.) As a result, there is no legally protected activity at issue in this case, as the privilege does not apply to information disclosed to a psychotherapist, under CANRA. The trial court correctly concluded that no privacy interest is at stake.

21

According to plaintiffs, the conclusion is contrary to public policy and will, among other things, discourage patients from seeking needed mental health counseling. The patients will be in fear of criminal prosecution and the stigma attached to their abhorrent behavior. In *Tarasoff*, *supra*, 17 Cal.3d 425, our Supreme Court found "that such predictions are entirely speculative." (*Id.* at p. 440, fn. 12.) In any event, "the public policy favoring protection of the confidential character of patient psychotherapist communications must yield to the extent to which disclosure is essential to avert danger to others. The protective privilege ends where the public peril begins." (*Id.* at p. 442.)

### 3. *Younghanz* applies to the case.

Plaintiffs assert, incorrectly, that AB 1775 interferes with patients' right to seek treatment for sexual disorders involving the viewing of Internet child pornography. In *Younghanz*, *supra*, 156 Cal.App.3d 811, 815-816, the court rejected a contention that the mandatory disclosure requirement in child abuse reporting statutes violated a "fundamental right to seek a cure for [ ] illness" guaranteed by the federal and state Constitutions. Younghanz challenged his conviction for sexual acts with his daughter, claiming that the psychotherapist's mandatory reporting requirements violated his "fundamental" right to obtain treatment for his mental illness. (*Id*. at pp. 815-818.) The court wrote, "The right to seek a particular form of medical treatment as a cure for one's illness . . . has not been recognized as a fundamental right in California." (*Id.* at p. 816.) It explained that the ""import decisions""" recognized by the high court ""as falling within the right of privacy"" include ""matters relating to marriage, procreation, contraception, family relationships, and child rearing and education" [citations omitted], but do not include medical treatment.'" (*Ibid*., quoting *People v. Privitera* (1979) 23 Cal.3d 697, 702.)[7] No fundamental privacy interest guarantees treatment for a sexual disorder that causes a patient to indulge in the criminal conduct of viewing Internet child pornography.

_____

[7] *Younghanz*'s conclusion that the realm of fundamental rights to privacy does not include medical treatment in a particular form is persuasive authority on the issue of whether a protected privacy interest exists in the circumstances of this case.

22

In sum, plaintiffs have failed to establish the first element of *Hill.* There is no constitutionally protected right at issue in the complaint. When patients seek medical treatment for their sexual disorders, they have no legally protected privacy interest in communicating that they have downloaded, streamed or accessed child pornography from the Internet. The disclosures of patients within the psychotherapy relationship that they have viewed illegal child pornography on the Internet are neither protected by the privacy provisions of our Constitution nor privileged under Evidence Code section 1014.

For similar reasons, plaintiffs' allegations about "sexting" minors is without merit because the minors do not have a fundamental right to produce or possess child pornography, including viewing sexually explicit images of other minors.

### B. There is no reasonable expectation of privacy.

Plaintiffs cannot establish a reasonable expectation of privacy, the second element of their state constitutional claim. "'The extent of [a privacy] interest is not independent of the circumstances.' [Citation.] Even when a legally cognizable privacy interest is present, other factors may affect a person's reasonable expectation of privacy. . . . [¶] In addition, customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy. [Citations.]" (*Hill*, *supra*, 7 Cal.4th at p. 36.) Generally, whether a plaintiff has a reasonable expectation of privacy in the circumstances presents a mixed question of law and fact; however, we may resolve the issue as a matter of law on undisputed facts. (*Id*. at p. 40.)

CANRA was enacted to protect children who are abused and "sexually exploited" by the act of downloading, streaming or accessing child pornography. Plaintiffs assert that their patients have a reasonable expectation of privacy in communications about viewing Internet child pornography.

As a matter of law, "customs, practices, and physical settings surrounding particular activities" have inhibited any "reasonable expectations of privacy" (*Hill*, *supra*, 7 Cal.4th at p. 36) in disclosures by plaintiffs' patients that they engaged in the illegal activity of downloading or viewing Internet child pornography. As stated above, the conduct, which is criminal under state and federal law, is not entitled to constitutional

23

protection. Not only is it illegal, the conduct is reprehensible, shameful and abhorred by any decent and normal standards of society. Plaintiffs concede as much in their complaint and on appeal. Yet plaintiffs urge this court to find that their patients have a reasonable expectation of privacy in communicating their conduct to psychotherapists. We decline to do so because the Legislature long ago determined that child abuse, including the sexual exploitation of children, should be reported to appropriate law enforcement and child welfare agencies. Psychotherapists are among the mandated reporters. Therefore, there is no egregious breach of social norms in requiring reports of such criminal activity. Under the circumstances of this case, there is no reasonable expectation of privacy.

Plaintiffs are incorrect that *Gonzales*, *supra*, 56 Cal.4th 353, and *Story*, *supra*, 109 Cal.App.4th 1007, support their claim that patients have a reasonable expectation of privacy in reporting past crimes to their psychotherapists. *Gonzales* involved a proceeding to have the defendant committed as a sexually violent predator. (*Gonzales*, at p. 356.) Gonzales, who was convicted of sex offenses, underwent psychological treatment as a condition of parole. (*Id.* at p. 359.) The prosecution sought Gonzales's psychological records, arguing that they were discoverable under Evidence Code section 1024, the dangerous patient exception to the psychotherapist-patient privilege. (*Gonzales*, at p. 361.) Gonzales asserted that the disclosure would violate the psychotherapist-patient privilege. (*Ibid.*) The trial court ordered the disclosure under the dangerous patient exception. (*Id.* at pp. 361-362.)

*Gonzales* determined that the prosecutor presented no evidence that Gonzales had said anything in the therapy sessions that would lead the psychotherapist to believe she was required to reveal confidential communications to prevent danger to defendant or to others. (56 Cal.4th at pp. 381-382.) The Supreme Court concluded the trial court erred in ordering the disclosure of Gonzales's confidential records and communications during therapy sessions under the circumstances of that case. (*Id.* at pp. 381-383.) *Gonzales* concluded, however, that the trial court's erroneous ruling under state law did not amount to a federal constitutional violation given the limited intrusion and the substantial state

24

interest supporting disclosure and use of evidence in the proceeding to determine Gonzales's mental state.  (*Id*. at pp. 384-388.)  Contrary to plaintiffs' implicit contentions *Gonzales* did not hold that the psychotherapist privilege applies as a matter of law when a patient admits a past crime.

Similarly, *Story*, *supra*, 109 Cal.App.4th 1007, does not support plaintiffs' arguments concerning the past crimes of patients.  *Story* considered whether the records of psychotherapy ordered as a condition of probation (for an assault with a deadly weapon in which Story beat and disrobed the victim) were protected from disclosure in a subsequent criminal action (for murder and rape).  (*Id*. at p. 1010.)  *Story* rejected the prosecution's contention that the records were not privileged because Story only sought counseling in order to avoid incarceration.  (*Id*. at pp. 1012, 1016-1017.)  *Story* concluded that the probation condition did not entitle the prosecution to all of Story's records.  (*Id*. at pp. 1012, 1019.)  *Story* does not support the contention that a past crime disclosure during therapy is privileged as a matter of law and, therefore, not subject to disclosure under any circumstances.

### C.  *We do not address the seriousness of any privacy invasion.*.

The DA asserts that the third threshold element of a "serious invasion of a privacy interest" is not satisfied because the intrusion involves a nonpublic disclosure from a psychotherapist to authorities.  (§ 11165.)  Reports under this section have extensive privacy protections.  (§ 11167.5)  The limited disclosure on a confidential basis within the intent of CANRA is not an actionable invasion of privacy.  Because we have held that patients have no legally protected privacy interest, we need not examine the seriousness of CANRA's intrusion into that nonexistent interest.

### D.  *The state's countervailing interests justifies any invasion of privacy.*

Defendants assert that the state's countervailing interest in discovering and protecting sexually exploited children justifies the intrusion into the privacy interests of plaintiffs' patients.  "The diverse and somewhat amorphous character of the privacy right necessarily requires that privacy interests be specifically identified and carefully compared with competing or countervailing privacy and nonprivacy interests in a

25

'balancing test.' The comparison and balancing of diverse interests is central to the privacy jurisprudence of both common and constitutional law. [¶] Invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest. Legitimate interests derive from the legally authorized and socially beneficial activities of government and private entities. Their relative importance is determined by their proximity to the central functions of a particular public or private enterprise. Conduct alleged to be an invasion of privacy is to be evaluated based on the extent to which it furthers legitimate and important competing interests." (*Hill*, *supra*, 7 Cal.4th at pp. 37-38.)

The Legislative decision to enact CANRA—then amend it by enacting AB 1775 to expand "sexual exploitation" to include Internet child pornography—is reasonably calculated to further the purpose of protecting abused and sexually exploited children. "'Child pornography harms and debases the most defenseless of our citizens.' (*United States v. Williams* (2008) 553 U.S. 285, 307.) Its production, sale, and distribution are "'intrinsically related" to the sexual abuse of children in two ways. [Citation.] First, as a permanent record of a child's abuse, the continued circulation itself . . . harm[s] the child who had participated. Like a defamatory statement, each new publication of the speech . . . cause[s] new injury to the child's reputation and emotional well-being. [Citation.] Second, . . . the traffic in child pornography [provides] an economic motive for its production . . . .' (*Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 249 . . . , citing *New York v. Ferber* (1982) 458 U.S. 747, 759-760; see [*Osborne*, *supra*,] 495 U.S. 103, 109-110 . . . .) Under either rationale, child pornography is proximately linked to the sexual abuse of children (*Ashcroft*, at p. 250), '*a most serious crime and an act repugnant to the moral instincts of a decent people*' (*id.* at p. 244, italics added)." (*Grant*, *supra*, 58 Cal.4th at p. 477.) Thus, California's "legitimate public interest in exposing and prosecuting serious crime" is a countervailing interest that justifies "publication of otherwise private information or behavior." (*Hill*, *supra*, 7 Cal.4th at pp. 25-26 [discussing the common law tort of invasion of privacy].)

1. <u>Plaintiffs' interests do not outweigh the state's interests</u>**.**

Plaintiffs argue that the strength of the state's interest is diminished by a number of factual and public policy considerations. Plaintiffs contend that the privacy rights of patients who report viewing child pornography from the Internet should prevail in a balancing of interests. The contention lacks merit for several reasons.

To begin with, most, if not all, of plaintiff's arguments are based on immaterial matters given our conclusion that the threshold elements of a state constitutional claim do not exist. Plaintiffs concede that California has a "compelling interest in identifying and protecting children" from "known or suspected 'hands-on' sexual abuse or exploitation of children in real life." Defendants are correct that the state *may* show, but is not required to show, a *compelling interest* in the circumstances of this case. We address plaintiffs' other contentions below as to whether state interests justify intrusion into the psychotherapist-patient relationship.

a. The *Scull* decision

Relying primarily on *Scull*, *supra*, 206 Cal.App.3d at pages 790-794, plaintiffs contend that California's interest in identifying Internet child pornography victims does not justify the violation of the psychotherapist-patient privilege. In *Scull*, a psychiatrist accused of sexually molesting teenaged patients, sought to set aside a trial court order granting a prosecutor's motion for disclosure of information about the defendant's former patients. (*Scull*, at pp. 786-788.) *Scull* concluded the forced disclosure of patients who might be victims of a psychiatrist/pedophile violated the psychotherapist-patient privilege of the former patients. (*Id*. at pp. 786-787, 792.)

The *Scull* court rejected the idea that the teenaged *patients'* right to confidentiality was overcome by evidence that pedophiles tend to be repeat offenders and that disclosure of the names was necessary to avoid harm to other young victims. (206 Cal.App.3d at pp. 792-793.) Instead, the appellate court concluded that the information was not crucial to the prosecution's case and discovery of the information was not necessary to protect the public from harm. (*Ibid*.) "The policy which requires that a doctor warn of the proclivities of dangerous patients in order to prevent harm to others is not implicated

27

where the persons who are sought to be identified are not sources of danger to the public." (*Id*. at p. 793.)

The *Scull* court observed that the injuries complained of had already taken place and there was no evidence that injury was likely to occur in the future. (206 Cal.App.3d at p. 793.) In such circumstances, the state's interest was less "because there was nothing that it could do to prevent the commission of a crime." (*Ibid*.) The court acknowledged that the power to search for additional victims and evidence of other crimes, if properly used, might be "beneficial." (*Ibid*.) But, in *Scull,* the "remote benefits" of contacting former patients did not outweigh "the significant intrusion" into the patients' rights. (*Id*. at p. 794.)

Other than the fact that *Scull* involved a psychiatrist and patients, *Scull* bears no resemblance to this case. Clearly, *Scull* involved the protection of privacy rights of patients who were not involved in any type of criminal conduct and who were not themselves considered to be at risk of causing harm to the public. The issue under consideration was whether they had been the victims of a pedophile. By contrast, the issue in this case is whether the trial court erred in dismissing a cause of action wherein the psychotherapists claim that they are not required to disclose information about their patients who admit to engaging in the sexual exploitation of children by downloading, streaming or accessing Internet child pornography.

### b. Empirical evidence and psychotherapists' opinions

Many of plaintiffs' arguments are premised on the psychotherapists' opinion that they do not believe that their patients have abused or sexually exploited a child in real life or present an imminent danger of doing so. Once again, the patients' conduct of viewing and possessing child pornography is criminal. (§§ 311.3, subd. (a), 311.11, subd. (a); *Luera*, *supra*, 86 Cal.App.4th at pp. 518-522.)

Even if allegations about clinical correlations and the psychotherapists' opinions about imminent danger of physical abuse by the patients who view child pornography are accepted as true, it does not guarantee that none of the patients will ever physically abuse a child. A report to authorities may disrupt the proliferation of child pornography and

28

deter the underlying conduct of viewing children who have already been sexually exploited. Both of these objectives protect children and justify AB 1775.

c. The theory of "hands-on" contact

We disagree with plaintiffs' assertion that AB 1775 cannot be justified because "CANRA only mandates reporting of 'hands on' sexual abuse exploitation of identifiable children in the real world, not indirect emotional harm to children in a virtual world involving viewers' fantasies and sexual interests, however disgusting or aberrant." The argument ignores the purpose of AB 1775, which is that whether or not patients produce or distribute the images, an investigation could lead to the discovery and protection of sexually exploited children.

The claim that CANRA cannot be expanded to include Internet child pornography victims because they are "virtual" and therefore are not harmed is patently absurd. (*People v. Morris* (1988) 46 Cal.3d 1, 15 ["a statute should not be interpreted in a manner that would lead to absurd results"].) We decline to interpret CANRA in the narrow way suggested by plaintiffs that it only means to protect "hands-on" sexual exploitation of children and not children depicted in "virtual" images on the Internet who are depicted in obscene sexual acts. As we have previously noted, we have an "obligation to construe narrowly any exception to the psychotherapist-patient privilege." (*Stritzinger*, *supra*, 34 Cal.3d at p. 513.) However, our obligation does not extend to the narrow interpretation suggested by plaintiffs regarding AB 1775.

Even before AB 1775 was enacted, former section 11165.1, subdivision (c)(3) defined "sexual exploitation" as "[a]ny person who depicts a child in, or who knowingly develops, duplicates, prints, or exchanges, any film, photograph, video tape, negative, or slide in which a child is engaged in an act of obscene sexual conduct, except for those activities by law enforcement and prosecution agencies and other persons described in subdivisions (c) and (e) of Section 311.3." (Stats. 2000, ch. 287, § 21, p. 2533.) Thus, the Legislature had previously defined "sexual exploitation" to include images of children engaged in acts of obscene sexual conduct. The former statute did not contain a "hands-on" element nor did it require that "the harm" be continuing. A person in

29

possession of hard copies or photographs depicting obscene images would be in the same position as a person with downloaded pictures of children. They may or may not have access to the children. In addition, it can be assumed that with photographs, just as with images on the Internet, some of the harm (the sexual exploitation) would in some instances have already occurred. Therefore, there is no distinction between photographs and virtual images of child pornography victims. By amending the definition of sexual exploitation to include downloading, streaming or accessing Internet child pornography, the Legislature has acknowledged that children in Internet images are just as much victims as children in photographs.

Even if children depicted in Internet images are not participating in live broadcasts, we are not persuaded by plaintiffs' argument that AB 1775 is invalid because the harm has already occurred and a patient's mere viewing of the children depicted in the images does not harm the children. In this respect, plaintiffs purport to be "sensitive" to the argument that "every viewing of a child pornography image further debases and harms the reputation and emotional well-being of the depicted child," yet they claim "this type of indirect emotional harm to a child (and perhaps now an adult) unknown to the viewer does not fall within CANRA's definition of child abuse." According to plaintiffs, the children are not "real victims" because the Internet is "virtual."

"'[T]he "victimization" of the children . . . does not end when the pornographer's camera is put away. The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions in at least three ways. [¶] *First*, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. . . . The consumer who "merely" or "passively" receives or possesses child pornography directly contributes to this continuing victimization. [¶] *Second*, . . . [t]he recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children. [¶] *Third*, the consumer of child pornography instigates the original production of child pornography by providing an economic motive

30

for creating and distributing the materials. . . . The underlying point . . . is that there is no sense in distinguishing . . . between the producers and the consumers of child pornography. Neither could exist without the other.' (*U.S. v. Norris* (5th Cir. 1998) 159 F.3d 926, 929-930, citations omitted; see *Osborne*, *supra*, 495 U.S. at pp. 109-111; see also *People v. Cantrell* (1992) 7 Cal.App.4th 523, 540 [§ 311.11 'aimed at extinguishing the market for sexually explicit materials featuring children'].)" (*Grant*, *supra*, 58 Cal.4th at pp. 477-478.)

As *Grant* clearly establishes, plaintiffs' claims that their patients' conduct in being merely consumers of child pornography does not "harm" real world children completely lacks merit. The consumption of child pornography is not distinguishable from production and distribution in terms of harm to the victims of child pornography. (58 Cal.4th at pp. 477-478.) Accordingly, we disagree with plaintiffs that once the images are on the Internet and are therefore "virtual," the purposes of CANRA are irrelevant.

d. The possibility of criminal prosecution

We are not persuaded by plaintiffs' contention that the Legislature has unconstitutionally utilized AB 1775 as a vehicle to criminally prosecute child pornography viewers. Since 1965, the Legislature has placed child abuse reporting statutes in the Penal Code as a means of protecting children from abuse. The 2014 amendment of CANRA by enactment of AB 1775 merely expanded the definition of sexual exploitation to further that purpose by addressing the issue of child Internet pornography. The fact that the patients could be criminally prosecuted does not outweigh California's legitimate purpose. Instead, the scales must be tipped in favor of sexually exploited children who cannot protect themselves.

e. The breadth of AB 1775

Plaintiffs contend AB 1775 is an overbroad invasion of their patients' privacy rights because the state's interest under CANRA in protecting children is not substantially furthered given the international nature of Internet child pornography. Plaintiffs argue CANRA's purposes are irrelevant when dealing with Internet child pornography because the Act generally limits mandated reporting to "hands-on" or

31

"contact" sexual abuse and sexual exploitation. According to plaintiffs, there is no reasonable likelihood that the child victims are in California or can be identified and protected by the state.

There is simply no merit to the contention that CANRA and its purposes, including AB 1775's expansion of the definition of sexual exploitation to encompass modern technology via the Internet, have become irrelevant due to any of the considerations raised by plaintiffs. As previously noted, CANRA's definition of sexual exploitation does not include a "hands-on" element or contact by the possessor or viewer of images depicting child pornography. Nothing in plaintiffs' claims (including the proliferation of child pornography or its international boundaries) negates the purposes of CANRA generally or AB 1775 specifically. Indeed, an argument can be made that the proliferation of child pornography over international boundaries through the Internet makes the issue even more pertinent. (See *Paroline v. United States* (2014) ___ U.S. ___, ___ [134 S.Ct. 1710, 1717] ["Because child pornography is now traded with ease on the Internet, 'the number of still images and videos memorializing the sexual assault and other sexual exploitation of children, many very young in age, has grown exponentially.'"].)

We are not persuaded that the difficult task of identifying sexually exploited children as California minors renders AB 1775 invalid. Plaintiffs cannot prevail in the constitutional challenge by suggesting that "in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . ." (*Pacific Legal Foundation* v. *Brown*, *supra*, 29 Cal.3d at pp. 180.) Therefore, the fact that plaintiffs' patients may be viewing children located in other states or countries does not render the AB 1775 invalid under this standard.

The Legislature has determined that the state has an interest in requiring reports that patients have viewed or accessed Internet child pornography in order to protect children from abuse and sexual exploitation. (§§ 11164, 11165.1, subd. (c)(3), 11166, subd. (a).) Public policy considerations favoring confidentiality in psychotherapist-patient relationships do not overcome the strong public policies favoring disclosure of

32

parties engaging in the illegal conduct of viewing Internet child pornography. The Legislature has already determined that the paramount interest in such a situation is the protection of children from sexual exploitation on the Internet. In short, when balanced against an admission during psychotherapy, the Legislature has found the protection of children is the predominant interest to be protected. Plaintiffs' state privacy claims fail under California as a matter of law because any invasion of privacy is justified by AB 1775, which "substantially furthers" one or more "legitimate and important competing interests." (*Hill*, *supra*, 7 Cal.4th at pp. 38, 40.)

## V. Plaintiffs' Claim of a Federal Constitutional Violation

Plaintiffs assert that AB 1775 violates their "fundamental privacy right to nondisclosure of personal medical information" under the Fourteenth Amendment of the United States Constitution. Their claim is based on Ninth Circuit authorities, *Caesar v. Mountanos* (9th Cir. 1976) 542 F.2d 1064, 1067, cert. den. (1977) 430 U.S. 954, and *Hawaii Psychiatric Soc., Dist. Branch v. Ariyoshi* (D. Hawaii (1979) 481 F.Supp. 1028, 1039. Contrary to plaintiffs' claims, we are not bound to conclude that there is a fundamental privacy interest at stake requiring a compelling interest analysis. "'[W]e are not bound by a federal circuit court opinion. [Citation.] In the absence of a controlling United States Supreme Court decision on a federal question, we are free to make an independent determination of law.' [Citations.] '"Where the federal circuits are in conflict, the decisions of the Ninth Circuit are entitled to no greater weight than those of other circuits." [Citation.]' [Citation.] We are, however, bound to accept the decisions of the United States Supreme Court. [Citation.]" (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 468.)

Recently, in *Gonzales*, *supra*, 56 Cal.4th at page 384, the California Supreme Court noted the United States Supreme Court had "not yet definitively determined whether the federal Constitution embodies even a *general* right of informational privacy." (56 Cal.4th at p. 384 [noting that *Whalen*, *supra*, 429 U.S. p. 605, had assumed, but did not decide that there was a general right of informational privacy].) As we previously noted, in *Whalen*, *supra*, 429 U.S. 589, 599-900, the United States Supreme Court

33

assumed there was a right to informational privacy in prescription records of controlled substances. (*Gonzales*, at p. 384.) However, "in many contexts, the scope and application of the state constitutional right of privacy is broader and more protective of privacy than the federal constitutional right of privacy as interpreted by federal courts. [Citations.]" (*American Academy of Pediatrics v. Lungren*, *supra*, 16 Cal.4th at pp. 326-327.)

*Gonzales* further explained: "In *Jaffee v. Redmond* (1996) 518 U.S. 1, the United States Supreme Court adopted a psychotherapist-patient privilege applicable in federal proceedings, but the *Jaffee* decision was grounded in the Federal Rules of Evidence, not the federal Constitution, and subsequent lower court decisions confirm that the federal psychotherapist-patient privilege recognized in *Jaffee* 'is not rooted in any constitutional right of privacy.' (*U.S. v. Glass* (10th Cir. 1998) 133 F.3d 1356, 1358; see *U.S. v. Chase* (9th Cir. 2003) 340 F.3d 978, 993 ['a violation of the psychotherapist-patient privilege is not a constitutional error . . .']; *U.S. v. Squillacote* (4th Cir. 2000) 221 F.3d 542, 560 [the psychotherapist-patient privilege recognized in *Jaffee* 'is a testimonial or evidentiary one, and not constitutionally based'].)" (*Gonzales*, *supra*, 56 Cal.4th at p. 384, fn. omitted.) Thus, the psychotherapist-patient privilege is not rooted in the federal Constitution.

Even if we assume the existence of a federal privacy right in the psychotherapy privilege, AB 1775 must be "accorded a strong presumption of validity" and will be upheld "'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" (*Heller v. Doe* (1993) 509 U.S. 312, 319-320.) The privacy claim fails if there is a reasonable exercise of California's broad police powers enacted to address "problems of vital local concern." (*Whalen*, *supra*, 429 U.S. at pp. 597.)

California has a legitimate interest in the identification and protection of sexually exploited children, which is a reasonable exercise of its police power to address the problem of sexually exploited children on the Internet. There is no constitutional deprivation in this case because the federal Constitution does not forbid laws criminalizing the mere possession of child pornography. (See *Osborne*, *supra*, 495 U.S. at p. 111 ["Given the gravity of the State's interest in this context, we find that Ohio may

34

constitutionally proscribe the possession and viewing of child pornography."].)  "[A] State's interest 'in safeguarding the physical and psychological well-being of a minor' is 'compelling.'  [Citation.]"  (*New York v. Ferber*, *supra*, 458 U.S. at pp. 756-757.) Furthermore, "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."  (*Id*. at p. 757.)

CANRA's purpose in protecting children is furthered by identifying persons who view child pornographic images because each separate viewing of such an image constitutes actual and separate instances of sexual exploitation.  California's enforcement of laws criminalizing the production and possession of child pornography is rationally related to the state's goal in protecting children under federal standards articulated in *Osborne*, *supra*, 495 U.S. 103, *New York v. Ferber*, *supra*, 458 U.S. 747, and *Whalen*, *supra*, 429 U.S. 589.

## VI.  Sexting Minors

Plaintiffs cannot prevail on the claim that, as applied, CANRA is unconstitutional as to "sexting" minors under the holding of *Planned Parenthood*, which states that two minors who were both under the age of 14 and had engaged in sexual activity were not subject to CANRA.  (181 Cal.App.3d at p. 280.)  The decision was explicitly limited to "voluntary conduct among minors under 14 years of age."  (*Id*. at p. 276, fn. 14.)  It did not address or purport to apply to every possible circumstance involving minors.

Plaintiffs have not met their burden of showing that AB 1775 is invalid as to "sexting" minors.  The state has an interest in monitoring situations that may involve undue influence, coercion, use of force, or exploitation, such as sexual conduct between a minor under age 14 and an older adolescent.  Psychotherapists are not investigators who can make such determinations.  When a report is made, law enforcement agencies have discretion to investigate, but the fact that minors are involved does not render AB 1775 unconstitutional.

## VII.  Leave to Amend

The trial court did not give plaintiffs leave to amend, a decision reviewed for an abuse of discretion.  (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

While plaintiffs may request an amendment on appeal "the burden of proving a reasonable possibility that an amendment can cure the defect 'is squarely on the plaintiff.' [Citations omitted.] Thus, plaintiffs must identify some legal theory or state of facts they wish to add by way of amendment that would change the legal effect of their pleading." (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 520, fn. 16; Code Civ. Proc., § 472c, subd. (a); *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746.)

In the opening brief, plaintiffs merely asserted that the trial court erred by dismissing the complaint without leave to amend. Defendants point out that plaintiffs failed to request leave to amend in the trial court and did not argue a basis for amending in the opening brief. For the first time in their reply brief, plaintiffs argue and cite authority that the trial court abused its discretion in dismissing the original complaint without leave to amend.

"Generally, appellate courts will consider an argument raised for the first time in a reply brief only if the appellant presents a good reason for failing to present the argument earlier. [Citation.]" (*Adams v. MHC Colony Park. L.P.* (2014) 224 Cal.App.4th 601, 615.) Plaintiffs do not explain their failure to analyze their claim that the trial court should have granted them leave to amend their complaint. Plaintiffs have also failed to show how the defects in the complaint can be cured by amendment. Accordingly, plaintiffs have failed to establish the trial court abused its discretion in sustaining the demurrers without leave to amend. (*Hernandez v. City of Pomona*, *supra*, 46 Cal.4th at p. 520, fn. 16; *City of Dinuba v. County of Tulare*, *supra*, 41 Cal.4th at p. 865.)

## DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>.


BOREN, P.J.

We concur:


CHAVEZ, J.                    HOFFSTADT, J.

36